**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAVID WOODWARD,

      Petitioner-Appellant,

v.

JOE WILLIAMS, Warden, Central
New Mexico Correctional Facility,

      Respondent-Appellee.

No. 00-2093

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-97-465-BB/RPL)**

---

Richard A. Winterbottom, Assistant Federal Public Defender, Albuquerque, New
Mexico, for Petitioner-Appellant.

Patricia A. Gandert, Assistant Attorney General, State of New Mexico (Patricia A.
Madrid, Attorney General, State of New Mexico, with her on the briefs), Santa
Fe, New Mexico, for Respondent-Appellee.

---

Before **EBEL** and **HENRY**, Circuit Judges, and **ROGERS**,[*] Senior District
Judge.

---

**EBEL**, Circuit Judge.

---

    [*] The Honorable Richard D. Rogers, Senior District Judge, District of
Kansas, sitting by designation.

David Woodward was convicted of murdering his wife. The district court denied his petition for a writ of habeas corpus. There are two issues raised in this appeal. We affirm in part, reverse in part, and remand for further proceedings.

Woodward challenges, under the Confrontation Clause, the trial court's admission of hearsay testimony from two witnesses that, before she was murdered, Woodward's wife told them, "He [Woodward] is going to kill me." The New Mexico Supreme Court found that these statements were excited utterances. The federal habeas court held they were not excited utterances because they were statements of belief rather than of fact, but found the admission of the testimony harmless. We agree with the New Mexico Supreme Court that the statements were excited utterances. Because this is a firmly rooted exception to the hearsay rule, admission of the testimony did not violate Woodward's rights under the Confrontation Clause.

The district court allowed Woodward to amend his habeas petition to add sixteen new issues that he had exhausted in a separate state habeas proceeding. The court later found these issues barred under the one-year statute of limitations applicable to federal habeas proceedings. Although pursuant to Duncan v. Walker, 121 S. Ct. 2120 (2001), Woodward's federal habeas petition did not toll this statute of limitations, we nevertheless remand for the district court to address

one of the issues on the merits and determine whether the statute of limitations should be equitably tolled.

## BACKGROUND

Deborah Woodward drowned in her bathtub after being poisoned with ether. David Woodward, Deborah's husband, was charged with the murder. Deborah had filed for divorce, but Woodward continued to spend weekends at their house (while Deborah was away) to visit their children. Evidence was introduced at trial that Woodward had talked about killing someone with ether, had stated on the day of her death that Deborah would be found dead in her bathtub, and had confessed to killing his wife, although the witness on the last point recanted at trial. A jury found Woodward guilty of first-degree murder, aggravated burglary, and battery.

At trial, two witnesses testified, over objection, that Deborah had stated Woodward would kill her.[1] The statements arose out of an incident that occurred

---

[1]A third witness, Dr. Glyn Chaffee, Deborah's psychologist, also testified that Deborah told him "David is going to kill me" during one of their sessions. On direct appeal, the New Mexico Supreme Court held that this statement was inadmissible under state hearsay law, but that the resulting violation of Woodward's Confrontation Clause rights was harmless because of the cumulative testimony of the other two witnesses. State v. Woodward, 908 P.2d 231, 239-40 (N.M. 1995). This ruling is not before us except to the extent it bears on harmlessness, an issue we do not reach.

on the date Deborah filed for divorce. Woodward had shown up at Deborah's parents' house, where Deborah and their children were staying, and he became angry when he learned that Deborah had obtained a restraining order against him. Deborah's father, who was also in the house that day, testified that when he opened the door to admit Woodward, he gave Woodward a copy of the restraining order and asked him to leave: "He [Woodward] gave the door a shove and he knocked me down in the hall. . . . I wrestled him down and he got away and when he went through the kitchen, he pulled the phone out of the wall and he went into the den and he took the boys, who were crying, and he went out through the garage." Deborah's father tried to stop Woodward with an unloaded gun. During this event, Deborah was hiding in the house.

Zelda Maggart, Deborah's mother, who was in the house and could see Deborah, described hearing the noise of the confrontation. Deborah ran over to the house of Benjamin Butler, a neighbor. Butler testified that Deborah knocked loudly on his door. When his wife opened the door, Deborah ran in, asked him to lock the door, and fell down on the couch in a fetal position, crying. According to Butler, she said, "He is going to kill me." Maggart came in about a minute later. When she arrived, Deborah was curled up on the sofa, saying, "He is going to kill me."

The trial court admitted the statements made by Deborah to Butler and Maggart under the excited-utterance hearsay exception. On direct appeal to the New Mexico Supreme Court, Woodward argued that this testimony should not have been admitted. State v. Woodward, 908 P.2d 231, 234 (N.M. 1995). The New Mexico Supreme Court ruled that Deborah's statements to Butler and Maggart were admissible as an excited utterance. Id. at 234-35. Although the parties agree that Woodward also raised a Confrontation Clause argument with regard to this testimony, the New Mexico Supreme Court did not separately address the issue.

Woodward then filed a petition for habeas corpus under 28 U.S.C. § 2254. A magistrate judge recommended finding that the admission of Butler's and Maggart's testimony violated Woodward's Confrontation Clause rights, but that the error was harmless. The district court adopted this recommendation.

Because Woodward's state conviction became final before April 24, 1996, the one-year statute of limitations on his federal habeas action, 28 U.S.C. § 2244(d), began to run on April 24, 1996. United States v. Simmonds, 111 F.3d 737, 746 (10th Cir. 1997). Woodward filed his federal habeas petition on April 4, 1997, twenty days before the one-year statute of limitations ran. On April 9, 1997, he filed a state habeas petition raising sixteen more issues. That petition was denied, and the New Mexico Supreme Court denied certiorari on January 26,

1998. Thirty-eight days later, on March 5, 1998, Woodward filed a motion to amend his federal habeas petition to add the sixteen new issues raised in his state habeas petition. The magistrate judge granted the motion to amend. Upon reviewing the merits of the amended habeas petition, however, the magistrate judge recommended finding that the new issues were barred by the statute of limitations. The district court adopted this recommendation.

The district court granted a certificate of appealability (COA) on "[w]hether the violations of Petitioner's Confrontation Clause rights were harmless error under Brecht v. Abrahamson, 507 U.S. 619 (1993)." We granted a COA on a second issue: "Were the claims petitioner was permitted to add by amendment properly dismissed thereafter as untimely under § 2244(d)?" These two issues have been fully briefed.

The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291 over the issues for which a COA has been granted. 28 U.S.C. § 2253(c)(1)(A).

**DISCUSSION**

I. Confrontation Clause

The state asserts that the district court was incorrect to find that admission of Butler's and Maggart's testimony violated the Confrontation Clause.[2] The Sixth Amendment provides that a defendant has the right "to be confronted with witnesses against him." Hearsay evidence does not violate the Confrontation Clause if (1) the declarant is unavailable at trial and (2) the statement bears adequate "indicia of reliability." Idaho v. Wright, 497 U.S. 805, 814-15 (1990). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Id. at 815. Here, Deborah was unavailable at trial because she was dead. The state asserts that her statements to Butler and Maggart fall within the "excited utterance" exception (also called a "spontaneous declaration") to the hearsay rule. That exception is firmly rooted. White v. Illinois, 502 U.S. 346,

_____

[2]Although this alternate ground for affirming is not part of the precise question for which COA was granted, we consider it because (1) the state is entitled to defend the judgment on any ground supported by the record without filing a cross-appeal, see, e.g., Tinkler v. United States ex rel. FAA, 982 F.2d 1456, 1461 n.4 (10th Cir. 1992); and (2) a state need not seek a COA to take an appeal from the district court's decision, see Fed. R. App. P. 22(b)(3). See Garcia v. Lewis, 188 F.3d 71, 75 n.2 (2d Cir. 1999).

355 n.8 (1992). The New Mexico Supreme Court found that this testimony fell within the state's excited utterance exception. Woodward, 908 P.2d at 234-35.

We may not grant habeas relief for a claim adjudicated on the merits in a state court proceeding unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). In this case, the New Mexico Supreme Court found the testimony of Butler and Maggart admissible under a state-law hearsay exception, but did not explicitly consider the federal constitutional question that confronts us. In such a situation, "we review a state court decision by assessing whether it is reasonably supported by the record and whether its legal analysis is constitutionally sound." Paxton v. Ward, 199 F.3d 1197, 1209 (10th Cir. 1999). We review de novo the federal district court's legal analysis of the state court decisions, and we review for clear error any factual findings by the federal district court. Valdez v. Ward, 219 F.3d 1222, 1230 (10th Cir. 2000).

The New Mexico Supreme Court correctly found that Deborah's statements to Butler and Maggart fall within the excited-utterance exception. This exception requires that (1) there was a startling event; (2) the statement was made while the declarant was under the stress of excitement from this event; and (3) the statement

- 8 -

related to this event.  E.g., 6 Wigmore on Evidence § 1750, at 202-03, 222 (James H. Chadbourn rev., 1976 ed.); see also Paxton, 199 F.3d at 1209 (recognizing these elements for Confrontation Clause purposes).  This is the same legal standard the New Mexico Supreme Court applied.  See Woodward, 908 P.2d at 234.  Its legal analysis is therefore constitutionally sound.

The New Mexico Supreme Court's findings that all three elements were met in this case are reasonably supported by the record.  First, Woodward's confrontation with Deborah's father, as described by both her parents, could reasonably be viewed as a startling event.  Second, Deborah's statements were made shortly after this event, while she was curled into the fetal position on the Butlers' couch.  Thus, it could reasonably be said she was under the stress of excitement from the event at the time of her statement.  Third, the statement, "He is going to kill me," could reasonably be seen as related to the stress of Woodward's intrusion.

The magistrate judge suggested that the statements could not have been related to the startling event because there was no evidence that Woodward confronted Deborah directly.  This is an unduly narrow reading of the requirement that the statement "relate" to the startling event.  Deborah was present in the house during Woodward's confrontation with her father and it can be inferred that

she heard the noise and panicked because of it. The New Mexico Supreme Court's ruling was reasonably supported by the record.

Woodward asserts, and the magistrate judge agreed, that an excited utterance must be a statement of fact that relates to the startling event. Since Deborah's statement, "He is going to kill me," was not a factual statement (such as, "He said he is going to kill me"), the magistrate judge found that it could not qualify as an excited utterance. We disagree.[3] A statement may be admitted as an excited utterance so long as it relates to the startling event. In Martinez v. Sullivan, 881 F.2d 921, 927-29 (10th Cir. 1989), for example, we held that the statement "They're going to rape him" was an excited utterance and that its admission did not violate the defendant's Confrontation Clause rights. That statement is of the same non-factual character as the statements in this case.

Our conclusion is in accord with the weight of other authorities. See 30B Michael H. Graham, Federal Practice and Procedure § 7043, at 322 (interim ed. 2000) ("If the statement relates to the startling event or condition, it matters not, for example, that the statement contains an opinion . . . ."); cf. United States v.

_____

[3]The sole case that the magistrate judge cited in support of the rule that an excited utterance must be a statement of fact, State v. Garcia, 512 S.E.2d 507 (S.C. 1999), is unhelpful. In that case, the South Carolina Supreme Court refused to apply the excited-utterance exception because there was no showing that the statement happened in temporal proximity to the startling event. Id. at 510 n.4. The decision says nothing about a need for the statement to be factual.

Hartmann, 958 F.2d 774, 784 (7th Cir. 1992) (holding it was not plain error to admit as an excited utterance a hearsay statement by the decedent that he feared being killed by the defendants); United States v. Vazquez, 857 F.2d 857, 859, 864 (1st Cir. 1988) (admitting as an excited utterance, "Now I'm going to get all the blame and you guys are going to get out"). Indeed, while the Federal Rules of Evidence generally exclude from the then-existing-state-of-mind exception "a statement of memory or belief," Fed. R. Evid. 803(3), there is no such limitation for excited utterances, Fed. R. Evid. 803(2). The Advisory Committee Notes to Rule 803 specifically state that an excited utterance is not limited to a "description or explanation of the event or condition" but rather includes anything that "relate[s]" to the event.

We therefore affirm the district court on the alternate ground that the testimony of Butler and Maggart did not violate the Confrontation Clause. Because of our disposition, we do not reach harmless-error analysis.

## II. Amended Habeas Petition

We review de novo the district court's decision to dismiss the added issues due to the statute of limitations. Sterlin v. Biomune Sys., 154 F.3d 1191, 1194 (10th Cir. 1998). We consider three arguments: (1) that Woodward's federal habeas petition tolled AEDPA's statute of limitations; (2) that his amended

- 11 -

petition "relates back to" the date of his first habeas petition under Fed. R. Civ. P. 15(c); and (3) that the statute of limitations should be equitably tolled.

Woodward's first argument, that federal habeas petitions toll AEDPA's statute of limitations, was rejected by the Supreme Court in Duncan v. Walker, 121 S. Ct. 2120, 2129 (2001) (overruling Petrick v. Martin, 236 F.3d 624 (10th Cir. 2001)).

We have previously addressed Woodward's Rule 15(c) argument by setting forth the following rule:

> [P]ursuant to Rule 15(c), an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.

United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000) (alterations omitted) (emphasis added). Although this petition was brought under § 2254 rather than § 2255, we see no reason to treat the issue differently. Cf. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2000) ("[C]ases applying Rule 15(c) to § 2255 petitions are persuasive in the § 2254 context.").

Woodward's original petition raised only evidentiary claims, including the Confrontation Clause issue discussed above. The amended petition added claims of ineffective assistance of counsel and juror misconduct, which are "new" claims within the meaning of Espinoza-Saenz and therefore do not relate back to the date

- 12 -

of the original habeas petition. Woodward also added an evidentiary argument that does relate back, however. In his original petition, Woodward argued that the trial court violated his due process rights by allowing recanted statements to be introduced. In the amended petition Woodward also argued that the court violated his rights by not allowing him to introduce evidence that the statement had been recanted. This amendment simply "clarifies or amplifies a claim or theory in the original" petition, and therefore relates back to the date of the original petition. We remand for the district court to address this issue.[4]

Woodward's equitable tolling argument also merits further consideration. We review a district court's decision on equitable tolling for abuse of discretion. See Arnold v. Air Midwest, 100 F.3d 857, 861 (10th Cir. 1996). Woodward alleges that as of February 20, 1998, he had not received notice of the state court's final disposition in his case. If the statute of limitations were tolled until February 20, Woodward's amended petition would appear to be timely.[5] Woodward argues that his lack of notice entitles him to equitable tolling.

_____

[4]Although the district court rejected Woodward's original evidentiary argument regarding the recanted statements, neither it nor the magistrate judge gave a reason. We express no opinion on the merits of Woodward's new argument. We also note that the amended petition included several other evidentiary claims, which Woodward waived before the district court.

[5]Woodward filed his state habeas petition on April 9, 1997, fifteen days before the statute of limitations ran. He filed his amended federal petition on March 5, 1998. If the statute of limitations were tolled until February 20, 1998, the remaining fifteen days would not have run fully by March 5.

- 13 -

AEDPA's statute of limitations is subject to equitable tolling only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 121 S. Ct. 1195 (2001). In particular, a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.) (remanding for the district court to determine the date on which the petitioner first received notice of the denial of his state appeal), amended in part, 223 F.3d 797 (5th Cir. 2000).

The district court did not address Woodward's equitable tolling argument; rather, it simply overruled his objection without comment. Without any discussion of the relevant factors by the district court, we find ourselves unable to "engag[e] in any meaningful review of the trial court's decision." Mobley v. McCormick, 40 F.3d 337, 341 (10th Cir. 1994). We therefore vacate the district court's judgment on this issue and remand for further proceedings. On remand, the court should balance the equities of this case on the record and, if necessary, determine when Woodward actually learned of the state court's disposition.

- 14 -

**CONCLUSION**

We AFFIRM the district court's disposition of the Confrontation Clause issue because we find no Confrontation Clause violation. On the statute-of-limitations issue, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.