*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0235p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

RICKY JONES,

          *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

          *Respondent-Appellee.*

No. 10-5105

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
Nos.: 6:04-cr-70-1; 6:09-cv-7082—Danny C. Reeves, District Judge.

Decided and Filed: July 31, 2012

Before: MOORE and COLE, Circuit Judges; ROSE, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Alistair E. Newbern, VANDERBILT LAW SCHOOL, Nashville, Tennessee, for Appellant. Charles P. Wisdom, Jr., Erin M. Roth, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. Ricky Jones, Beaver, West Virginia, pro se.

    MOORE, J., delivered the opinion of the court, in which COLE, J., joined. ROSE, D. J. (p. 10), delivered a separate opinion concurring in the result.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Ricky Jones pleaded guilty on April 11, 2005, to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He was classified as an armed

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

career criminal based on three prior felony convictions and sentenced to a term of 188 months of imprisonment. One of those prior convictions was for reckless homicide under Kentucky law. Jones now appeals the denial of his pro se motion to vacate his sentence under 28 U.S.C. § 2255 on the basis of *Begay v. United States*, 553 U.S. 137 (2008). We agree with Jones and the United States that Jones is entitled to relief in this case. We therefore **REVERSE** the judgment of the district court and **REMAND** for resentencing consistent with this opinion.

## I. BACKGROUND

In January 2004, the police received complaints that Jones was allegedly brandishing a firearm and had discharged it. Jones was thereafter detained in a traffic stop during which an officer discovered a loaded revolver in the vehicle. At the time, Jones had been convicted of three prior felonies: (1) "Theft of Property of the Value of more than $100" and second-degree escape in 1982; (2) second-degree robbery in 1991; and (3) reckless homicide in 1999. R. 1 (Compl. Aff. at ¶9) (Page ID #3). On April 11, 2005, Jones pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Because Jones was deemed to be an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), Jones faced a mandatory minimum sentence of fifteen years.

Jones filed his first motion pursuant to 28 U.S.C. § 2255 on July 10, 2009, seeking relief pro se on the basis of *Begay*. *Begay* was announced April 16, 2008, but Jones claimed that he did not hear of the decision until other prisoners informed him of it in May 2009. The district court denied Jones's motion to vacate without asking the government to respond for three reasons: (1) Jones's *Begay* claim was time-barred and not entitled to equitable tolling; (2) reckless homicide in Kentucky is a crime of violence under the Armed Career Criminal Act; and (3) in any event, *Begay* does not apply

retroactively. Jones, now with counsel, timely appeals on all three bases. We agree with Jones and address his arguments in reverse order.[1]

## II.  APPLICATION OF THE ACCA

### A.  Retroactivity of *Begay*

Although we have not yet decided whether *Begay* applies retroactively, we hold so today. The Supreme Court has set forth a three-part test for determining whether a defendant is entitled to retroactive relief following the pronouncement of a seemingly new rule of law: (1) the defendant's judgment must be final when the rule is announced; (2) the rule must in fact be new; and (3) the rule must be either a substantive rule of criminal law or a watershed rule of criminal procedure. *O'Dell v. Netherland*, 521 U.S. 151, 156-57 (1997) (citing *Teague v. Lane*, 489 U.S. 288, 311-12 (1989)).[2] Jones's conviction became final in 2005 after his time to file a direct appeal expired; *Begay* was not announced until 2008. The first element is therefore easily met.

We agree with the district court and the parties that *Begay* announced a "new rule" because its holding was not dictated by prior precedent. *See Graham v. Collins*, 506 U.S. 461, 467 (1993). "A holding constitutes a 'new rule' within the meaning of *Teague* if it breaks new ground, imposes a new obligation on the States or the Federal

---

[1]The United States has identified a number of affirmative defenses that it has explicitly declined to assert, including a waiver provision in Jones's plea agreement, procedural default, and the statute of limitations. Appellee Br. at 11-12. Because procedural default and plea-agreement waivers are not jurisdictional arguments, we are not required to consider these defenses sua sponte and decline to do so. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (declining to consider procedural default sua sponte), *cert. denied*, 546 U.S. 1100 (2006); *Hunter v. United States*, 160 F.3d 1109, 1113-14 (6th Cir. 1998) (declining to enforce plea-agreement waiver after government failed to timely raise the defense); *see also United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir.) (noting appellate waivers are not jurisdictional), *cert. denied*, 549 U.S. 1088 (2006). The district court, however, did consider sua sponte the issue of timeliness. The Supreme Court has held that district courts may dismiss state habeas petitions sua sponte on timeliness grounds, *see Day v. McDonough*, 547 U.S. 198, 209 (2006), but we have not yet held whether that holding extends to federal habeas petitioners, *see Solomon v. United States*, 467 F.3d 928, 929 n.1 (6th Cir. 2006). We again decline to address that issue, because regardless Jones is entitled to relief from the statute of limitations on the basis of equitable tolling as discussed herein.

[2]Although the *Teague* analysis on retroactivity has not been applied by the Supreme Court to § 2255 motions, *see Danforth v. Minnesota*, 552 U.S. 264, 269 n.4, 281 n.16 (2008), our circuit along with others has held that *Teague* is equally applicable to § 2254 and § 2255 proceedings. *See, e.g.*, *Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009) (applying *Teague* to § 2255 motion but expressing concerns about propriety of doing so "because many of the comity and federalism concerns animating *Teague* are lacking"); *Humphress v. United States*, 398 F.3d 855 (6th Cir.), *cert. denied*, 546 U.S. 885 (2005) (applying *Teague* to § 2255 motion).

Government, or was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 467 (internal quotation marks and emphasis omitted). We do not believe that a federal court, had it considered this claim at the time Jones's conviction became final, "would have felt compelled by existing precedent to conclude," *O'Dell*, 521 U.S. at 156, that convictions based on reckless behavior do not qualify as predicate felonies under 18 U.S.C. § 924(e)(2)(B)(ii), *Begay*, 553 U.S. at 145. Indeed, several reasonable jurists on the Supreme Court itself disagreed with the rule announced in *Begay*. We reached the same conclusion in *Humphress v. United States*, 398 F.3d 855 (6th Cir.), *cert. denied*, 546 U.S. 885 (2005), where we held that *United States v. Booker*, 542 U.S. 220 (2005), was a new rule because the result was not apparent to "all reasonable jurists" prior to being announced. *Humphress*, 398 F.3d at 861 (internal quotation marks omitted).

We also agree with the parties and our sister circuits that *Begay* is a substantive rule, not a procedural rule. Substantive rules are "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (citations omitted). They also include "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *O'Dell*, 521 U.S. at 157 (internal quotation marks omitted). Substantive rules "apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352 (internal quotation marks omitted). Procedural rules, on the other hand, "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* New procedural rules are retroactive only if they announce a "watershed rule[] of criminal procedure." *Id.* (internal quotation marks omitted).

*Begay* is a new substantive rule and not procedural because it substantially altered the punishment certain categories of defendants may face for a crime. We agree with the well-reasoned analysis of our sister circuits who have reached the same result. *See Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010) (holding *Begay* and *Chambers* announced new substantive rules), *cert. denied*, 131 S. Ct. 3019 (2011); *Lindsey v. United States*, 615 F.3d 998, 1000 (8th Cir. 2010) (holding *Begay* retroactive), *cert. denied*, 131 S. Ct. 1712 (2011); *United States v. Shipp*, 589 F.3d 1084, 1090 (10th Cir. 2009) (holding *Chambers* retroactive).[3] A defendant who does not qualify as an armed career criminal after *Begay* who nonetheless remains subject to a fifteen-year mandatory minimum sentence "faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352. Without the ACCA, the statutory maximum Jones could receive for being a felon in possession of a firearm was ten years. "[T]he application of the ACCA imposed, at a minimum, five years of imprisonment that the law otherwise could not impose upon him under his statute of conviction." *Welch*, 604 F.3d at 415.

Although *Begay* did not alter the underlying elements of the crime, the new rule nonetheless "involve[d] the substantive construction of a criminal statute," *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000), here the ACCA. And the new construction substantially changed the lawful punishment certain classes of defendants may receive for a particular crime. *Welch*, 604 F.3d at 415; *Shipp*, 589 F.3d at 1090. Our holding in *Humphress* is not to the contrary, because *Booker* did not reduce the maximum available sentence for any crime. *Humphress*, 398 F.3d at 862 (holding *Booker* not a substantive rule); *see also Welch*, 604 F.3d at 415 (distinguishing *Booker*). Because *Begay* is a new, substantive rule, we hold that *Begay* applies retroactively.

---

[3]Although the district courts appear split on the matter, we are aware of no federal circuit court that has held that *Begay* is not entitled to retroactive application. The First Circuit, however, has suggested in dicta that a change in the First Circuit's interpretation of the career-offender enhancement in the U.S. Sentencing Guidelines "affects only the procedure by which a district court calculates a defendant's sentence. It . . . is not a retroactive substantive change in the law." *United States v. Giggey*, 551 F.3d 27, 36 n.3 (1st Cir. 2008).

**B.  Application of *Begay* to Reckless Homicide Conviction**

The next question is whether the retroactive application of *Begay* would change the outcome of Jones's sentence given his past convictions.  We hold that it does.  Jones was treated as an armed career criminal for three prior felony convictions:  (1) a 1982 second-degree escape; (2) a 1991 second-degree robbery; and (3) a 1999 reckless-homicide conviction.  Jones attacks only the third, his 1999 conviction for reckless homicide.  To qualify as a violent felony under the ACCA, a prior felony conviction must either have an element of the "use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), or else be a conviction for "burglary, arson, or extortion, involve[] the use of explosives, or otherwise involve[] conduct that presents a serious potential risk of physical injury to another," *id.* § 924(e)(2)(B)(ii).

Under Kentucky law, reckless homicide occurs when a person causes the death of another "with recklessness."  Ky. Rev. Stat. § 507.050(1).  When a crime requires only the mens rea of recklessness, it cannot qualify under the "use of physical force" subsection of the ACCA.  *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011) ("[W]e conclude that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct.") (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9-11 (2004)).  The district court therefore erred in concluding that Jones's reckless homicide conviction could qualify under this subsection of § 924(e)(2)(B).

Jones's conviction also no longer qualifies under the second subsection of § 924(e)(2)(B) in light of *Begay*.  Jones's conviction is not for one of the specific enumerated offenses; therefore, to be included, his conviction for reckless homicide must have "otherwise involve[d] . . . a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).  *Begay* held that the "otherwise" clause included only convictions resembling the enumerated offenses and therefore only convictions "involv[ing] purposeful, violent, and aggressive conduct."  *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted).  As a result, reckless conduct no longer qualifies under the residual clause either.  The Supreme Court has modified the standard in both *Chambers v. United States*, 555 U.S. 122 (2009), and *Sykes v. United States*, 131 S. Ct.

2267 (2011), but the prohibition on reckless crimes still stands.  *See McMurray*, 653 F.3d at 376 n.9.  Therefore, Jones's conviction for reckless homicide cannot be counted for ACCA purposes.

## C.  Equitable Tolling

Finally, although Jones did not file his § 2255 motion within a year of the decision in *Begay* as required by § 2255(f), we hold that he is entitled to equitable tolling.  Equitable tolling is used sparingly and "only if two requirements are met.  First, the petitioner must establish that he has been pursuing his rights diligently.  And second, the petitioner must show that some extraordinary circumstance stood in his way and prevented timely filing."  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citations and internal quotation marks omitted), *petition for cert. filed*, No. 11-10643 (U.S. April 25, 2012).  Where the determinative facts are undisputed, the decision whether to apply equitable tolling is reviewed de novo.  *Solomon v. United States*, 467 F.3d 928, 932 (6th Cir. 2006).

Generally, to qualify as "extraordinary circumstances," the petitioner must show more than just his status as pro se or his limited access to a law library.  *Hall*, 662 F.3d at 751.  But the Supreme Court has also instructed us not to be rigid in our application of these principles and to consider each claim for equitable tolling on a case-by-case basis.  *Holland v. Florida*, 130 S. Ct. 2549, 2563 (2012).  "The flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices."  *Id.* (internal quotation marks and ellipsis omitted).

Here, Jones missed the one-year deadline by less than three months.  Jones explained in his filings before the district court that he did not learn of the Supreme Court's holding in *Begay* until May 12, 2009, due in large part to a series of prison transfers immediately before the case was announced that separated him from his legal materials and made it difficult for him to acquire access to new legal information from other prisoners.  In February 2008, before *Begay* was announced, Jones states that he was transferred without his legal materials to a new facility following medical treatment.

In June 2008, the Bureau of Prisons initiated a medical transfer from that new facility to yet another in West Virginia, but he did not arrive until September 2008 after spending time in holding facilities in Georgia and Oklahoma, still without his legal materials. Jones is partially illiterate and must rely on other prisoners for knowledge of changes in the legal landscape. He also has a variety of medical conditions, including seizures, that require frequent medication and impeded his ability to adequately obtain legal information. Jones averred that throughout this time he was constantly questioning others for legal advice on how to challenge his convictions, but did not receive information about *Begay* until other inmates informed him about it in May 2009.[4] Within two months of learning of his new right, he was able to obtain sufficient assistance to submit a motion to vacate under § 2255.

Although any one of the above factors may not constitute "extraordinary circumstances" alone, the combination of all of these factors justifies applying equitable tolling to Jones's claims. *See Solomon*, 467 F.3d at 934-35 (6th Cir. 2006) (holding transfer of petitioner without legal materials and poor prison communication contributed to application of equitable tolling);[5] *cf. Hall*, 662 F.3d at 751-52 (distinguishing *Solomon* because no evidence petitioner was separated from legal materials). Furthermore, Jones has met his burden of demonstrating that he was not sleeping on his rights and was diligent in pursuing new claims and this claim in particular once he became aware of its existence. The argument for equitable relief in this case is made all the more compelling by the United States's position that Jones should receive the relief he requests.

---

[4] Even though knowledge of filing deadlines is no longer part of our inquiry, we note the inherent differences between when the clock starts upon the conclusion of direct appeal and when the clock starts upon the issuance of a new Supreme Court case. Although we expect inmates to have knowledge of both, it would strain credulity to suggest that a defendant has the same level of access to information about the issuance of new Supreme Court cases as he does about his direct appeal. Inmates without attorneys typically become apprised of Supreme Court developments only through the prison grapevine, which is hardly a model of speed or accuracy.

[5] Although *Solomon* applied the pre-*Holland* test for equitable tolling, our subsequent cases have continued to rely on its analysis of potential considerations when applying the new test. *See, e.g.*, *Hall*, 662 F.3d at 751-52.

### III.  CONCLUSION

In light of the aforementioned conclusions, we **REVERSE** the judgment of the district court and **REMAND** for resentencing Jones without the application of the ACCA.

---

**CONCURRENCE**

---

ROSE, District Judge, concurring in result. While I agree that Appellant's conviction under K.R.S. § 507.050(1) does not constitute a crime of violence under *Begay v. United States*, 553 U.S. 137 (2008), and agree that *Begay* applies retroactively, I do not find that the Appellant diligently pursued his rights or that extraordinary circumstances prevented timely filing of his petition within one year of the Supreme Court's announcement of *Begay*. I concur in the majority's result specifically because the Appellee waived the one-year procedural bar established by the A.E.D.P.A.