NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0505n.06

No. 13-3504

FILED

*Jul 10, 2014*

DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

CHRISTOPHER L. CALHOUN  )
                                          )
       Petitioner-Appellant,  )
                                            )
                                            )  ON APPEAL FROM THE
v.  )  UNITED STATES DISTRICT
                                            )  COURT FOR THE
                                            )  NORTHERN DISTRICT OF
UNITED STATES OF AMERICA  )  OHIO
                                            )
       Respondent-Appellee.  )
                                            )
                                            )

BEFORE:    MOORE and ROGERS, Circuit Judges; NIXON, District Judge.[*]

    ROGERS, Circuit Judge.  Christopher Calhoun, a decorated combat veteran, pled guilty in federal court to knowingly and intentionally distributing 92.7 grams of cocaine base (crack), and to being a felon in possession of a firearm. The Fair Sentencing Act, which reduced certain mandatory minimums for crack possession, took effect after the underlying conduct in this case occurred, but before Calhoun accepted his plea deal and before the district court sentenced him. The Sentencing Commission subsequently amended the sentencing guidelines for crack cocaine. The amended guidelines took effect after the underlying conduct occurred and after Calhoun entered his guilty plea, but before Calhoun was sentenced. The district court sentenced Calhoun to 151 months' imprisonment under pre–Fair Sentencing Act guidelines and denied Calhoun's motion to correct his sentence because in his plea deal, Calhoun gave up his right to file any

---

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

motion, request, or other pleading "for the retroactive application of the Fair Sentencing Act of 2010 or any future guidelines changes for cocaine base (crack) sentences." Resentencing is nonetheless required because the plea agreement contains ambiguous language as to whether Calhoun waived his right to be sentenced under the guidelines in effect at the time of his sentencing, instead of those in effect at the earlier time of his plea agreement. This ambiguity must be construed in favor of Calhoun.

In May and June 2009, Calhoun distributed a total of 92.7 grams of crack, a crime for which the federal government indicted him pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B). Counts One and Three charged him with knowingly and intentionally possessing with intent to distribute and distributing 5 or more grams of crack. Count Two charged him with knowingly and intentionally distributing of 50 or more grams of crack. Calhoun was also indicted on a fourth count for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the time of the indictment, Calhoun had two prior felony drug convictions that qualified as potential predicates for an enhanced mandatory minimum life sentence under 21 U.S.C. § 851.

Under pre–Fair Sentencing Act (FSA) law, Count Two carried a mandatory minimum of ten years' imprisonment, and allowed the government to file two § 851 enhancements, raising the mandatory minimum to life imprisonment. Under the FSA, the same conduct carries a mandatory minimum of five years' imprisonment, and allows the government to file only one § 851 enhancement, which would raise the mandatory minimum to ten years' imprisonment. The government made clear that without a plea agreement, it intended to file both enhancements, and to seek the maximum sentence under pre–FSA law.

On August 4, one day after the FSA was enacted, Calhoun moved the district court to determine whether the FSA would apply to his case. The government asserted that the FSA did not apply to Calhoun's case (a position no longer held by the Department of Justice or the Attorney General). The district court agreed, finding the FSA inapplicable because Calhoun's underlying conduct "was completed long, long before the new statute" was enacted. The government set a deadline of August 18, 2010 for plea negotiations, and on the day of the deadline filed one § 851 enhancement, raising the mandatory minimum for Calhoun's conduct to twenty years. By the end of the day, Calhoun pled guilty, and in exchange for the government withdrawal of the enhancement, Calhoun agreed to the following waiver:

> The defendant further acknowledges that under the Title 21 statutory scheme applicable to him, had the United States Attorney's Office filed a notice of enhancement pursuant to Title 21, Section 851, United States Code, that he would have faced mandatory life in prison. The defendant, based on the decision of the government to forego the filing of a notice pursuant to Section 851, agrees not to file any motion, request, or other pleading, including any 18 U.S.C. § 3582 motion, for the retroactive application of the Fair Sentencing Act of 2010 or any future guideline changes for cocaine base (crack) sentences.

In addition, the plea agreement stated specifically that "federal sentencing law requires the Court to consider the advisory United States Sentencing Guidelines in effect at the time of sentencing." This accords with § 1B1.11 of the U.S. Sentencing Guidelines, which instructs a court to apply the advisory guidelines in effect at the time of sentencing, so long as doing so does not result in higher penalties for the defendant than those in effect at the time the crime was committed. Calhoun contends that the plea deal is ambiguous because of the disparity between these two parts of the plea agreement, which states that Calhoun waives the application of future guidelines changes, but that the court must apply the sentencing guidelines in effect at the time of his (future) sentencing. At the plea hearing, the district court referred only to the pre–FSA guidelines, which the judge used to determine that Calhoun's total offense level was 29.

On November 1, 2010, before Calhoun was sentenced, the amended crack sentencing guidelines took effect. Under the new guidelines, Calhoun's conduct carried a base offense level of 26, instead of 30. See U.S.S.G. § 2D1.1(c)(7). At sentencing on November 10, 2010, Calhoun moved the court to apply the crack guidelines in effect at the time of the sentencing; the district court denied the motion, finding that the plea agreement barred the application of the amended guidelines. The government threatened to vacate the plea deal and proceed to trial (with the two § 851 enhancements in place) if Calhoun persisted. Calhoun declined to withdraw his guilty plea, and the district court sentenced Calhoun to 151 months in prison, based on a pre-FSA guidelines range of 151–188 months. Under the amended guidelines in effect at the time of sentencing, the applicable range was 110–137 months. Calhoun moved under Fed. R. Crim. P. 35(a) to correct his sentence to reflect the post–FSA guidelines range, but the district court denied the motion, judging it barred by the plea agreement's provision preventing Mr. Calhoun from "seeking the retroactive application of the [FSA] or the application of any future guideline changes for cocaine base (crack) sentences." Calhoun did not appeal because of his plea agreement's appellate waiver.

In June 2012, the Supreme Court in *Dorsey v. United States*, 132 S. Ct. 2321 (2012), held that the FSA and the new guidelines amendments apply to defendants who, like Calhoun, committed their offense prior to the enactment of the FSA or the guidelines changes, but were sentenced thereafter. Eight months later, in light of *Dorsey*, Calhoun filed a habeas petition pursuant to 28 U.S.C. § 2255 seeking application of the FSA and the guidelines in effect at the time of sentencing. He argued that because his case was in the "pipeline" when the FSA was enacted (i.e., Calhoun had yet to accept his plea or be sentenced), the language of the plea that prevented the *retroactive* application of the FSA or the guidelines was inapplicable to Calhoun's

particular situation. The district court denied his petition without a hearing, and declined to issue a certificate of appealability, concluding that the plea agreement's language precluded the application of the FSA and the amended guidelines. The district court reasoned that this language "was included because the parties were well aware that Congress had just passed the Fair Sentencing Act of 2010 and that, as a result, new sentencing guidelines were imminent." In addition, the court noted that government had made a "significant concession" in agreeing not to file § 851 enhancements, and that Calhoun's motion "aims to sweeten an already generous deal in a way that neither Calhoun, the Government, nor this Court envisioned . . . . Calhoun understood the terms of the agreement and made his choice, knowing full well the consequences of accepting (or rejecting) it." A panel of this court issued a certificate of appealability to determine "whether a defendant can waive his right to have his sentence calculated under the guidelines in effect at the time of sentencing, and whether Calhoun executed such a waiver."

As a threshold matter, we decline to consider Calhoun's § 2255 petition procedurally barred because of the plea agreement's appellate waiver, the petition's timeliness, or Calhoun's alleged failure to state a sufficient ground for relief under the terms of § 2255. The government neglected to raise these affirmative defenses before the district court, thereby forfeiting them. In denying Calhoun's petition, the district court made no mention of them. In *Hunter v. U.S.*, 160 F.3d 1109, 1114 (6th Cir. 1998), we decided "that the government forfeited its right to rely on the appeal-waiver provision by failing to raise the issue in the district court." Procedural default and plea-agreement waivers are not jurisdictional arguments; therefore, we are not required to consider these defenses when not raised below. *Jones v. U.S.*, 689 F.3d 621, 624 n.1 (6th Cir. 2012); *see also U.S. v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006).

The plea agreement must be construed in Calhoun's favor because it contains conflicting language and is ambiguous, stating that Calhoun agrees not to seek the retroactive application of the FSA or any future guidelines changes, but that federal sentencing law requires the court to consider the advisory sentencing guidelines in effect at the time of sentencing. *See Hogg*, 723 F.3d at 744. The amended guidelines were in effect when Calhoun was sentenced on November 10, 2010. The plea therefore contains conflicting statements that give rise to different plausible interpretations about precisely what Calhoun was agreeing to. He could not have agreed both that "future guideline changes for cocaine base (crack) sentences" would not apply to him, and simultaneously that the court, in accordance with federal sentencing law, would consider the advisory sentencing guidelines in effect at the time of Calhoun's sentencing.

In addition, the agreement's waiver of Calhoun's right to seek the retroactive application of the FSA is ambiguous in light of *Dorsey*, which held that the FSA applies to all cases in which the defendant committed criminal conduct before the FSA's enactment, but was not yet sentenced at the time of the FSA's enactment (including those of defendants like Calhoun, who had not yet been sentenced). Because Calhoun's case clearly falls in the category of cases to which the FSA applied (even at the time that he accepted his plea deal), the term "retroactive" is ambiguous in context: the FSA may be retroactive with respect to the time of the crime, but not with respect to the time of sentencing. "As we have recognized, plea agreements must be interpreted in accordance with ordinary contract principles, with the intent of the parties ascertained primarily through the chosen wording of their agreement, and with any ambiguities construed against the Government." *Hogg*, 723 F.3d at 744; see also *U.S. v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). The district court understandably interpreted the plea agreement simply to foreclose application of after-the-fact developments in the law, but the particular plea

language and timing in this case rendered the plea agreement ambiguous. And such ambiguous language must be interpreted in Calhoun's favor.

Because the conflicting language of the plea agreement requires that this ambiguity be construed in Calhoun's favor, we need not address whether Calhoun's plea may be considered knowing and voluntary in light of *Dorsey*, and our subsequent decision in *Hogg*. Accordingly, we REVERSE the district court's order denying Calhoun's § 2255 petition, VACATE Calhoun's sentence, and REMAND the case for sentencing in accordance with FSA thresholds and the sentencing guidelines that were in effect on November 10, 2010.