Curtis Jerome BYRD, Petitioner,

v.

Catherine S. BAUMAN, Respondent.

Case No. 15–13528

United States District Court,
E.D. Michigan, Southern Division.

Signed 03/20/2017

Elizabeth L. Jacobs, Detroit, MI, Neil C. Williston, Waterford, for Petitioner.

Laura Moody, Raina I. Korbakis, Scott Robert Shimkus, Michigan Department of Attorney General, Lansing, MI, for Respondent.

**OPINION AND ORDER DENYING RESPONDENT'S MOTION TO DISMISS [7], GRANTING PETITIONER'S MOTION FOR EQUITABLE TOLLING [10], AND DENYING PETITIONER'S MOTION FOR RECONSIDERATION [15]**

LAURIE J. MICHELSON, U.S. DISTRICT JUDGE

Petitioner Curtis Jerome Byrd, a Michigan prisoner, filed a petition for habeas

corpus pursuant to 28 U.S.C. § 2254. (R. 1.) He challenges his state-court convictions, including first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b).

The parties agree that Byrd filed his petition one day after the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations expired. The only question is whether equitable tolling should apply. In the unique circumstances of this case, it should.

Byrd has also moved for the Court to reconsider a previously-denied request to stay the case and hold it in abeyance so that he can return to state court to exhaust an additional claim—one of actual innocence based on the newly-recanted trial testimony of Byrd's co-defendant. As that claim is plainly meritless, the Court will not stay the case.

## I.

The Michigan Court of Appeals described the case as follows:

> Defendant's convictions arise from the shooting death of Richard Joiner during an attempted robbery at a bank automated teller machine (ATM). Defendant and his codefendant, Charletta Atkinson, drove to the bank intending to rob someone. Defendant was armed with a gun. After they arrived at the bank, Atkinson took the gun from defendant and got out of the car. She confronted Joiner, cocked the gun, and demanded his money. Joiner grabbed the gun, and he and Atkinson fought for control over the gun as Joiner tried to get inside his car. During the struggle, the gun discharged and Joiner was fatally shot in the head. Atkinson returned to her vehicle, and defendant drove away.
>
> Atkinson testified at trial pursuant to a plea agreement[.] . . . Atkinson testified that, after arriving at the bank, defendant told her, "No, babe. I can't do this,"

after which he gave the gun to her. Defendant's theory of defense was that although he was involved in planning a robbery with Atkinson, he abandoned any intent to commit the crime once they arrived at the bank.

*People v. Byrd*, No. 301322, 2012 WL 1649788, at *1 (Mich. Ct. App. May 10, 2012).

The actual innocence claim Byrd now seeks to exhaust in state court, which the Court will address in further detail below, hinges on how the gun ended up in Atkinson's hands. At trial, she testified that he "gave" it to her. Now, in an affidavit, she says she "took" it from him—a development that Byrd contends establishes his innocence because he abandoned the crime before Atkinson tried to rob, and ultimately killed, Joiner.

On October 28, 2010, a jury found Byrd guilty of first-degree felony murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. (R. 8–1, PID 173.) Byrd was sentenced to life in prison without parole pursuant to Mich. Comp. Laws § 750.316(1). (R. 8–15, PID 1113.)

On direct appeal, the Michigan Court of Appeals affirmed Byrd's convictions on May 10, 2012. *People v. Byrd*, No. 301322, 2012 WL 1649788, at *1 (Mich. Ct. App. May 10, 2012). The Michigan Supreme Court denied leave to appeal on September 4, 2012. *People v. Byrd*, 492 Mich. 870, 819 N.W.2d 871 (2012). Byrd did not seek certiorari from the United States Supreme Court within the 90–day window to do so (December 3, 2012), after which the one-year statute of limitations for filing a federal habeas petition started to run. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).

Much of the statute of limitations then ticked away: Byrd did not file a motion for

relief from judgment in Wayne County Circuit Court until November 27, 2013. (R. 8–16.) While this tolled the one-year limitations period, only seven days remained. The trial court denied his motion on March 27, 2014 (R. 8–17) and denied his motion for reconsideration on April 25, 2014 (R. 8–19). The Michigan Court of Appeals denied leave to appeal on September 19, 2014. (R. 8–22.) The Michigan Supreme Court denied leave to appeal on June 30, 2015. (R. 8–23.) Byrd then moved for reconsideration, which the Michigan Supreme Court denied on September 29, 2015. (R. 1–7.)

Byrd filed his federal habeas petition eight days later, on October 7, 2015. Byrd's habeas petition raises three claims. First, Byrd maintains that his trial counsel was ineffective for failing to request an instruction that accident is a defense to felony murder. (R. 1–3, PID 20.) Second, Byrd argues that aspects of the prosecutor's closing argument deprived him of a fair trial. (R. 1–3, PID 23.) Third, Byrd claims that his trial counsel was ineffective by providing erroneous legal advice on the law of aiding and abetting. (R. 1–3, PID 26.)

In his petition, Byrd candidly admits that he filed it one day late. Indeed, the parties agree that because of the time that elapsed between the conclusion of Byrd's direct appeal and the filing of his state post-conviction motion, once the Michigan Supreme Court denied Byrd's motion for reconsideration on September 29, 2015, Byrd only had until October 6, 2015 to file a timely habeas petition. (R. 1, PID 14; R. 7, PID 74.) But Byrd filed his petition on October 7, 2015.

Byrd asks the Court to equitably toll the statute of limitations for one day because neither he nor his attorney for his state-court collateral proceedings, Mark Kriger, had notice that the Michigan Supreme Court had issued its order denying the motion for reconsideration until October 7, 2015, the day after the statute of limitations expired. (R. 1, PID 14.)

To explain more fully, Kriger apparently recognized that Byrd would be short on time to file a federal habeas petition if the Michigan Supreme Court denied the motion for reconsideration. (R. 1, PID 14.) Indeed, in August 2015, even though Kriger did not sign on to represent Byrd for a federal habeas petition, Kriger helped draft a *pro se* federal habeas petition and sent it to Byrd to sign. (*Id.*) Byrd signed the petition on August 12, 2015 and returned it for Kriger to file at the appropriate time. (*Id.*) Once the Michigan Supreme Court issued its order denying Byrd's motion for reconsideration, that court mailed Kriger a copy the same day, September 29, 2015. (R. 14, PID 1771.) But Kriger avers that he did not receive a copy until October 7, at which point the statute of limitations had already expired. (R. 1–8, PID 41.) As soon as Kriger did receive the order, he e-filed a federal petition on Byrd's behalf, flagged the timeliness issue in the petition, and asked the Court to equitably toll the statute of limitations for one day.

Because of that one-day lapse, Respondent moved to dismiss the petition. (R. 7.) In the time between the filing of the federal petition and respondent's motion to dismiss, another attorney, Neil Williston, had filed an "attorney substitution," indicating that he and Kriger agreed that Williston would take over as Byrd's counsel. (R. 4.) Rather than file a response to Respondent's motion to dismiss, Williston filed on Byrd's behalf a "Motion for Equitable Tolling." (R. 10.) During the time the two competing motions on addressing the petition's timeliness issue were pending, Williston unfortunately passed away. Thus, at Byrd's request, the Court entered an order that allowed him some time to obtain

new counsel and to file a response to the motion to dismiss. (R. 12.) Byrd's new counsel filed an appearance on January 30, 2017 and later filed a response to the motion to dismiss. (R. 13, 14.)

Through his new counsel, Byrd also seeks reconsideration of the Court's prior order denying his request to stay the case and hold it in abeyance so that he could return to state court to exhaust another claim. (R. 15.)

## II.

### A.

The Court begins with the petition's timeliness. Outside of a few contexts not relevant here, AEDPA provides that a federal habeas petitioner must file his petition within one year from "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." See 28 U.S.C. § 2244(d)(1)(A). The parties do not dispute when Byrd's state-court judgment became final. Nor do they dispute the time that the statute of limitations was tolled due to Byrd's collateral appeal in state court. See 28 U.S.C. § 2244(d)(2). Again, the only issue is whether the Court should equitably toll the statute of limitations for one day after it expired, when neither Byrd nor his then-attorney had notice that the state-court collateral appeal had concluded.

■■■ "AEDPA's limitations period is subject to equitable tolling, ... a doctrine that allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749 (6th Cir. 2011) (internal quotation marks and citations omitted). While the Sixth Circuit has held that equitable tolling should be ap-

plied "sparingly," Solomon v. United States, 467 F.3d 928, 933 (6th Cir. 2006), the Court has "also recognized the need for flexibility in equitable procedures." Stiltner v. Hart, 657 Fed.Appx. 513, 520 (6th Cir. 2016) (citing Jones v. United States, 689 F.3d 621, 627 (6th Cir. 2012)). Such "flexibility ... enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices." Jones, 689 F.3d at 627 (quoting Holland, 560 U.S. at 650, 130 S.Ct. 2549). To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks and citation omitted).

■■■ The Court recognizes that Byrd waited almost a year from the completion of his direct appeal to pursue relief in a collateral proceeding. But that does not mean he did not diligently pursue his rights. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[.]" Id. at 653, 130 S.Ct. 2549 (internal quotation marks and citations omitted). Byrd found himself crunched for time. At the conclusion of his collateral appeal in state-court he would have had only a handful of days to file his federal habeas petition. But notice that his collateral appeal concluded—in the form of the Michigan Supreme Court's order denying reconsideration—would have gone to Byrd's attorney for his collateral appeal, Mark Kriger, not Byrd directly. So to help ensure a timely filing, Kriger helped prepare a pro se federal habeas petition for Byrd in August 2015, well before the state-court collateral appeal concluded. After receiving the petition for his signature, Byrd promptly signed it

and returned it to Kriger, who apparently kept it on hand to file (as soon as the Michigan Supreme Court ruled).

■ There is little more that Byrd could have done. Given the mere week left on the statute of limitations after the issuance of the Michigan Supreme Court's order denying reconsideration, Byrd took a prudent course: he left the filing of his federal habeas petition in the hands of the person who would be the first to have notice of the order. Contrary to Respondent's suggestion (see R. 7, PID 76 n.1), the Court does not believe that Byrd or Kriger should have been forced to check the docket on a daily basis to see if the order had issued. A reasonably diligent attorney or litigant should have been able to safely assume that notice of the order would have arrived by mail within the seven days remaining on the statute of limitations. That the order took eight days to arrive leads to the next point: extraordinary circumstances stood in the way of Byrd's timely filing.

■ The Sixth Circuit has acknowledged that "[e]xtraordinary circumstances may ... exist when petitioners face a substantial, involuntary delay in learning about the status of their appeals." *Robinson v. Easterling*, 424 Fed.Appx. 439, 442 (6th Cir. 2011) (citing *Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002)).

For example, in *Miller*, the petitioner sought equitable tolling for a roughly six-month period during which he did not have notice that the Ohio Court of Appeals had denied his application to reopen his direct appeal under an Ohio procedural rule. 305 F.3d at 495. The Court noted that "in the normal course a petitioner who claims he did not receive a copy of a state court's decision may face obstacles in supporting his account," yet was "satisfied that ... Miller has adequately demonstrated that he did not, in fact, receive a copy of the Ohio Court of Appeals' order and thus lacked knowledge of its decision." *Id.* The Court thus held that because of Miller's "lack of notice" and "his diligence in pursing his claims" equitable tolling was justified from the date of the Ohio Court of Appeals' ruling until the date that Miller received notice of the decision. *Id.* at 496; see also *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (per curiam) (noting that a "delay in receiving notification ... could qualify for equitable tolling").[1]

The Court finds that equitable tolling is likewise justified here. The Court is satisfied that Byrd did not have notice that the Michigan Supreme Court denied his motion for reconsideration until October 7, 2015, the day after the AEDPA statute of limitations expired. The ruling issued on September 29, 2015, and according to the date-stamped envelope in the record, the Michigan Supreme Court sent a copy of it to Kriger by first class mail that same day. (R. 14, PID 1771.) The Court finds credible Kriger's declaration that he nevertheless did not receive a copy of it until October 7, 2015—an extraordinary circumstance given that the mail was to travel merely half-

1. Although the Sixth Circuit decided *Miller* under its pre-*Holland* test for equitable tolling, courts post-*Holland* have often cited or discussed *Miller* without questioning whether its equitable tolling holding remains good law. See, e.g., *Easterling*, 424 Fed.Appx. at 442; *United States v. Ross*, No. CR 2: 11–01(02)–DCR, 2015 WL 6871477, at *4 (E.D. Ky. Nov. 6, 2015); *Hall*, 662 F.3d at 752 (6th Cir. 2011); *Sadler v. State of Michigan*, No. 15-12437, 2016 WL 4437669, at *4 (E.D. Mich. Aug. 23, 2016).

848

way across the state of Michigan. *See* https://www.usps.com/ship/mail-shipping-services.htm (noting that the standard shipping time for first class mail is one to three business days).

In short, the Court finds that these unique circumstances warrant equitable tolling. Byrd was ready to file his petition over a month before he had to. His inability to file his petition on-time was simply due to his attorney's lack of notice that his collateral appeal had concluded in state court, something beyond his control. And the petition was filed electronically as soon as his attorney received such notice. Moreover, the Court understands that this precise situation is unlikely to arise again. According to Byrd's new counsel, the Michigan Supreme Court has adopted a system of electronic notification, which will eliminate any lack of notice to attorneys from mailing delays. (R. 14, PID 1742.)

Thus, the Court will equitably toll the time from the Michigan Supreme Court's denial of Byrd's motion for reconsideration, September 29, 2015, until the date that Byrd's then-counsel, Mark Kriger, had notice of the decision, October 7, 2015. As such, the Court finds that Byrd's petition is timely.

**B.**

■ With this procedural bar out of Byrd's way, the Court will not accept Byrd's invitation to allow another procedural device—the stay and abeyance procedure—to delay this case any further.

On May 18, 2016, Byrd's prior, now-deceased counsel, filed a motion asking to stay the case so that Byrd could return to state court to raise six new unexhausted claims. (R. 4.) One of those claims was an actual innocence claim based on an affidavit purportedly obtained from Byrd's co-defendant, Charletta Atkinson, in which she recanted her trial testimony that Byrd

"gave" her the gun before the shooting and instead said that she "took" it from him. On June 15, 2016, the Court denied Byrd's motion because it failed to explain why there was good cause for failing to raise the claims earlier, failed to explain why the laundry list of new claims had merit, and failed to attach anything but cover pages for the exhibits attached to the motion, including Atkinson's affidavit. (R. 9, PID 1704.)

Byrd's motion for reconsideration narrows the stay and abeyance request. Now Byrd seeks to exhaust only his actual innocence claim. And Byrd has finally provided a copy of Atkinson's affidavit, in which she says the following:

> During the Plea taking process I was not truthful when I stated that my co-defendant, Curtis Byrd, gave me the weapon involved. Rather, after my co-defendant said he could not and did not which [sic] to proceed with a robbery, I took the weapon from him and committed the crime without his help or assistance and against his wishes.

(R. 15, PID 1794.)

The Court finds that staying the case would be inappropriate and will thus deny the motion for reconsideration.

For one, the motion for reconsideration is untimely. The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration must be filed within 14 days after entry of the judgment or order. E.D. Mich. LR 7.1(h)(1). This motion was filed months later, and the Court is aware of no authority suggesting that a change of counsel gives a litigant a second bite at the apple and justifies a more than six-month delay in filing a motion for reconsideration.

Even so, the Court must deny Byrd's request to stay this case because the new claim Byrd seeks to exhaust in state court

is "plainly meritless." *See Rhines v. Weber*, 544 U.S. 269, 277–78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (holding that a court would "abuse its discretion" to grant a stay for a "plainly meritless" unexhausted claim).

To the extent that Byrd seeks to assert his actual innocence claim "as a gateway" to pass through the expiration of the statute of limitations, *see McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), he does not have to exhaust the claim first. Moreover, such a "gateway" claim is unnecessary here, as equitable tolling has cured Byrd's timeliness issue.

■ To the extent that Byrd instead seeks to assert an actual innocence claim as a standalone claim, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *see also Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Id.* Byrd's actual innocence claim entails no independent constitutional violation. Instead, the claim is simply that Atkinson's new affidavit establishes that Byrd abandoned the robbery attempt before Atkinson shot Joiner.

Thus, the Court will not stay the case for Byrd to exhaust his actual innocence claim in state court. So the Court will deny his motion for reconsideration.

### III.

For the reasons discussed, Respondent's Motion to Dismiss (R. 7) is DENIED, Petitioner's Motion for Equitable Tolling (R. 10) is GRANTED, and Petitioner's Motion for Reconsideration (R. 15) is DENIED. Petitioner has 30 days from the date of this order to file a brief in support of the petition, and respondent has 60 days thereafter to respond.

SO ORDERED.