RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ANTWAN J. HALL,

        *Petitioner-Appellant,*

    *v.*

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,

        *Respondent-Appellee.*

No. 09-3372

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00075—Michael R. Barrett, District Judge.

Argued: October 13, 2011

Decided and Filed:  November 30, 2011

Before:  GILMAN and KETHLEDGE, Circuit Judges; LUDINGTON, District
Judge.[*]

_____

## COUNSEL

**ARGUED:** Brian D. Ginsberg, COVINGTON & BURLING LLP, New York, New
York, for Appellant.  Gene D. Park, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellee.  **ON BRIEF:** Brian D. Ginsberg, COVINGTON &
BURLING LLP, New York, New York, for Appellant.  Gene D. Park, OFFICE OF THE
OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

      RONALD LEE GILMAN, Circuit Judge.  Antwan Hall was convicted of several

felony offenses in an Ohio state court and sentenced to a maximum term of 27 years in

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of
Michigan, sitting by designation.

prison. After exhausting his direct appeals and his petition for postconviction relief in the state courts, Hall filed a petition for a writ of habeas corpus in federal district court. He submitted the petition five days after the one-year statute of limitations for filing a habeas petition had run. The district court dismissed Hall's petition as time-barred, and further denied his request for a certificate of appealability (COA). This court subsequently granted Hall a COA on his claim that his lack of access to the trial transcript justified equitably tolling the limitations period. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The outcome of this appeal turns on the precise timing and nature of the events that took place in the aftermath of Hall's convictions. Those events are as follows:

Following Hall's conviction in an Ohio trial court on one count of aggravated robbery, two counts of rape, two counts of kidnapping, and one count of felonious assault, he was sentenced on August 15, 2005 to serve a maximum term of 27 years in prison. His trial counsel withdrew shortly after the sentencing. The trial court then appointed Brian Harrison to represent Hall on direct appeal. Harrison received a copy of Hall's trial transcript in December 2005. Hall's timely appeal to the Ohio Court of Appeals was filed the following month.

Around this time, relations between Hall and Harrison apparently became frayed. Hall alleges that, in the period between January and July 2006, Harrison acted unprofessionally by ignoring Hall's numerous attempts to obtain a copy of the trial transcript and by filing Hall's opening appellate brief without consulting him first. On July 17, 2006, Hall sent a letter to the Ohio Court of Appeals detailing Harrison's allegedly unprofessional conduct and requesting a copy of the appellate brief. Hall received a copy of the brief not long after sending the letter.

The Ohio Court of Appeals denied Hall's appeal on August 15, 2006. Shortly thereafter, Harrison withdrew as counsel. But rather than turn over to Hall all documents related to the case—including the trial transcript, which Hall had still not

seen—Harrison kept the documents. Hall was now forced to proceed pro se. He thus had to rely on the limited legal resources available to him in prison and to work under the constraints of the prison's policy that restricts inmates to no more than one law-library visit per week. These hurdles proved too high: Hall missed the September 29, 2006 deadline to timely appeal his convictions to the Ohio Supreme Court. The one-year statute of limitations for filing his habeas petition in federal court therefore started to run the next day, on September 30, 2006.

Four days after the limitations period began to run, Hall submitted his motion for a delayed appeal to the mailroom at the Lebanon Correctional Institution, the prison where he was incarcerated, for mailing to the Ohio Supreme Court. Although the motion was signed and notarized on October 4, 2006, and its certificate of service bears that date, the motion was not stamped as filed by the Ohio Supreme Court Clerk's Office until November 27, 2006. The reason for this nearly two-month delay is not apparent from the record. But whatever the reason, the limitations period was tolled on November 27, 2006, with approximately 10 months left on the habeas clock.

The limitations period remained tolled for several months while the Ohio Supreme Court considered and eventually denied Hall's motion for a delayed appeal. Hall then timely filed a motion for reconsideration. On March 14, 2007, when the Ohio Supreme Court denied Hall's motion for reconsideration, the limitations period began to run again. It continued running until January 16, 2008, on which date it expired. During that time, Hall filed a motion with the Ohio Court of Appeals to reopen his direct appeal, which that court denied on August 9, 2007. But the motion to reopen did not toll the limitations period because it was untimely filed and Hall failed to show good cause for the delayed filing. Hall did not file his habeas petition by the January 16, 2008 deadline.

Instead, on January 21, 2008—five days after the statute of limitations had expired—Hall signed and dated a pro se habeas petition, asserting insufficiency of the evidence and a *Miranda* violation as grounds for relief. He delivered the petition to the prison mailroom on that date. It was filed on February 1, 2008 in the United States

District Court for the Southern District of Ohio. Hall had still not received a copy of his trial transcript.

Arguing that the petition was time-barred, the state of Ohio filed a motion to dismiss. The district court referred the petition and the State's motion to dismiss to a magistrate judge. On September 24, 2008, the magistrate judge issued a Report and Recommendation (R&R) concluding that Hall's petition was presumptively untimely because, under the federal prison-mailbox rule, the petition was deemed filed five days after the statute of limitations had run. Then, turning to the question whether equitable tolling was applicable, the magistrate judge determined that Hall had not been diligent in pursuing his habeas petition, notwithstanding his lack of access to his trial transcript, and therefore was not entitled to equitable tolling. The magistrate judge thus recommended that the district court grant the State's motion to dismiss and deny Hall's request for a COA.

Hall objected to the R&R on several grounds. As relevant here, he offered three reasons why he had missed the one-year filing deadline: (1) his pro se status, (2) his limited access to the prison law library, and (3) Harrison's failure to provide him with a copy of the trial transcript. The district court, in its March 25, 2009 order, analyzed these reasons under the rubric of equitable tolling and determined that they were inadequate to overcome Hall's failure to file on time. It therefore declined to grant Hall equitable tolling, adopted the R&R, and dismissed his petition as untimely. The court also declined to issue a COA.

Hall then requested a COA from this court, limited to the question whether his lack of access to his trial transcript entitles him to equitable tolling. His request was granted on October 7, 2009, and this appeal followed.

## II. ANALYSIS

### A.      AEDPA's one-year statute of limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This limitations period starts to run from the latest of four circumstances. *Id.* The circumstance applicable to this case is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). AEDPA further provides that the limitations period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." *Id.* § 2244(d)(2).

Hall concedes that his habeas petition was not deemed filed until five days after AEDPA's limitations period had presumptively expired. His petition is thus time-barred unless Hall is entitled to equitable tolling. "The dismissal of a habeas petition by the district court as barred by [AEDPA's] statute of limitations is reviewed de novo." *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

### B.      Equitable-tolling standard for habeas petitioners

AEDPA's limitations period is subject to equitable tolling, *see Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010), a doctrine that "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). But courts grant equitable tolling "sparingly." *Id.* at 784. A habeas petitioner is entitled to equitable tolling only if two requirements are met. First, the petitioner must establish "that he has been pursuing his rights diligently." *Holland*, 130 S. Ct. at 2562 (internal quotation marks omitted). And second, the petitioner must show "that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotation marks omitted).

We note at the outset that this two-part test marks a departure, at least in form, from this circuit's previous approach in determining whether a habeas petitioner is entitled to equitable tolling. Prior to *Holland*, this court considered the following five factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). Hall argues that these five factors—one of which is diligence—are consistent with *Holland*'s two-part test in that they represent no more than an elaboration of *Holland*'s core requirements. As Hall puts it in his reply brief: "To pass the [five-factor] test is to demonstrate an 'extraordinary circumstance,'" as required by *Holland*. He therefore contends that the *Dunlap* factors remain the governing framework for equitable-tolling analysis in habeas cases.

We disagree. There can be no doubt that, under the test articulated by the Supreme Court in *Holland*, a habeas petitioner must demonstrate both that he has been diligent in pursuing his rights and that an extraordinary circumstance caused his untimely filing. This test is analytically distinct from *Dunlap*'s five-factor inquiry. Whereas *Dunlap* sets forth a variety of factors for the courts to consider, not all of which are "necessarily comprehensive or always relevant," *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (internal quotation marks omitted), *Holland* dictates the two requirements that must be met before a habeas petitioner is entitled to equitable tolling relief. Given this distinction, we conclude that *Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling. *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011) (unpublished opinion) (concluding that, in the wake of *Holland*, "requests for tolling under AEDPA are reviewed under a two-part test").

Hall nonetheless disputes this conclusion. He argues that *Dunlap* provides the applicable standard even after *Holland* because, in his words, "the five-factor test is 'not

necessarily divergent' from the two-factor test," and because "[t]he State has not suggested, let alone demonstrated, any situation in which the outcome would be different depending on which test is applied." As a practical matter, he may very well be right. But as a matter of law, he is wrong. This court in *Dunlap* adopted the five-factor inquiry as the relevant standard for determining equitable tolling in habeas cases. In so doing, the court expressly rejected the "different, although not necessarily divergent, standard" advocated by the government—the "extraordinary circumstances" test. *Dunlap*, 250 F.3d at 1008-09. With *Holland* now on the books, the "extraordinary circumstances" test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit.

**C.      Hall's arguments for equitable tolling**

Having clarified the applicable equitable-tolling standard in habeas cases, we now consider Hall's arguments for why equitable tolling is appropriate here. Hall offers the following three reasons: (1) his lack of access to the trial transcript; (2) his lack of notice of the nearly two-month gap between when he submitted his motion for a delayed appeal to the prison mailroom and when that motion was ultimately filed with the Ohio Supreme Court; and (3) his reliance on *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) (en banc), which was overruled by the Supreme Court on February 20, 2007. Each of these reasons will be addressed in turn below.

*1.      Lack of access to the trial transcript*

Hall's principal argument before the district court in support of equitable tolling was that his lack of access to the trial transcript prevented the timely filing of his habeas petition. This is also the issue that was identified in the COA granted by this court.

Standing alone, however, the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling. *Inglesias v. Davis*, No. 07-1166, 2009 WL 87574, at *2 (6th Cir. Jan. 12, 2009) (unpublished opinion) (holding that the petitioner's lack of access to the trial transcript and his limited ability to speak English did not warrant the equitable tolling of AEDPA's statute of limitations);

*see also Lloyd v. Van Natta*, 296 F.3d 630, 633-34 (7th Cir. 2002) (per curiam) (holding that the petitioner's inability to obtain the trial transcript is not grounds for equitable tolling); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir. 2002) (holding that the court's delay in furnishing the petitioner with the trial transcript is insufficient to justify equitable tolling); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001) (same as *Lloyd*). The courts have reached this conclusion because access to the trial transcript—although understandably helpful to petitioners—is not necessary to file a habeas petition, as was demonstrated in the present case by the fact that Hall ultimately filed his petition without ever having received the transcript.

A habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground." 28 U.S.C. § 2254, Rules Governing Section 2254 Cases, R. 2(c). But nowhere do the rules require the petitioner to submit a copy of the trial transcript. If anything, the rules seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record. The rules require the state to furnish the petitioner with the record once a habeas petition has been filed, and to "attach to [its] answer parts of the transcript that [it] considers relevant." *See id.* at R. 5(c). Further, the state must provide additional material upon request from the judge. *See id.* These rules indicate that a lack of access to the trial transcript is not the kind of "extraordinary circumstance" that stands in a petitioner's way and prevents a timely habeas filing. *See Holland*, 130 S. Ct. at 2562.

The facts of this case illustrate why this is so. Even without the transcript, Hall clearly knew what took place at his trial and what his grounds for relief were. His habeas petition as filed did little more than reassert "grounds asserted in pleadings previously filed on [his] behalf in the state post-conviction proceedings." *See Donovan*, 276 F.3d at 93. There is simply no reason why Hall could not have submitted on or before January 16, 2008 what he ended up submitting on January 21, 2008. His failure to do so seems more the consequence of a lack of diligence than of "circumstances beyond [his] control." *See Inglesias*, 2009 WL 87574, at *2 (internal quotation marks

omitted) (holding that the petitioner was not diligent where he filed an untimely habeas petition after repeatedly requesting the trial transcript without success).

Hall's pro se status and limited law-library access do not change our analysis. To support his contention that he was diligent, Hall relies on *Solomon v. United States*, 467 F.3d 928 (6th Cir. 2006). In particular, he points to the fact that the pro se habeas petitioner in *Solomon* was found entitled to equitable tolling in part because of limited law-library access and the unavailability of the trial transcript, circumstances that are also present here. But *Solomon* is easily distinguishable because the petitioner in that case "was transferred without his legal materials" to a new prison, placed in administrative detention, and then transferred to yet another prison "to secure his presence as a witness in an upcoming trial"—all just a few weeks before his habeas petition was due. *Id.* at 934.

Upon being returned to the first prison, Solomon did not sleep on his rights; rather, he "immediately asked staff members at [the prison] to provide him with the address or phone number of the Clerk of the District Court in Cincinnati" so that he could "inform the court of his situation." *Id.* He then completed his habeas petition within a month after being sent back to his original prison. Solomon's delay in filing was thus caused by the prison transfer—an "external circumstance" beyond his control that "*prevented* him from filing on time"—not a lack of diligence. *See Inglesias*, 2009 WL 87574, at *2 (emphasis in original).

The facts of this case, in contrast, reveal no similar extraordinary circumstance. When the Ohio Supreme Court denied Hall's motion for reconsideration on March 14, 2007, Hall had more than 10 months in which to timely file his habeas petition. He instead filed an untimely motion to reopen in the Ohio Court of Appeals, which that court denied on August 9, 2007. At that point, Hall still had over five months to timely file his habeas petition. He failed to do so, which suggests a lack of diligence.

Hall's inability to access the transcript of his trial is unfortunate. But it is not enough, even in combination with his pro se status and limited law-library access, to warrant the equitable tolling of AEDPA's limitations period.

### 2.    *Lack of notice of the delay between submission and filing of state-court appeal*

Perhaps recognizing the weakness of his transcript argument, Hall makes two new arguments on appeal. He first argues that because he was never notified of the nearly two-month delay between when he submitted his motion for a delayed appeal to the prison mailroom and when that motion was ultimately filed with the Ohio Supreme Court, he had reason to believe that he had filed his habeas petition on time. Put differently, Hall submits that this unexplained and unexpected delay supplies the necessary "extraordinary circumstance" to justify equitably tolling his limitations period.

Hall bolsters this argument by drawing an analogy to the facts of *Miller v. Collins*, 305 F.3d 491 (6th Cir. 2002), a case in which this court applied the doctrine of equitable tolling. In *Miller*, the habeas petitioner did not learn that the state court had denied his application for postconviction relief until almost six months after the court had issued its order. The reason for his lack of notice is not indicated in the opinion. Miller finally became aware of the state court's order because, when he filed a motion to proceed to judgment on his postconviction application, the court responded by sending a letter notifying him of its earlier decision to deny the same. On appeal, this court tolled the limitations period during those six months because Miller lacked notice that his AEDPA clock was running and because he had been diligent in pursuing his claims by following up on his application for postconviction relief. *Id.* at 495-96.

Hall argues that the same outcome is warranted here. He contends that he is even more deserving than the petitioner in *Miller*, who filed his habeas petition three months late, because Hall submitted his petition just five days after the deadline. Hall also points out that, unlike the petitioner in *Miller*, he was unaware that he was filing his petition late. But his argument, despite its surface plausibility, was not presented in the district court and is not within the scope of the COA. It has therefore been waived. *See United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006) (noting the "long-standing rule that this court generally will not consider an argument not raised in the district court and presented for the first time on appeal"); *see also White v. Mitchell*, 431 F.3d 517, 536 (6th Cir. 2005) (holding that an issue outside the scope of the COA is not properly

before the court on appeal). Because the district court did not have the chance to pass upon this argument, we decline to expand the scope of the COA to cover it. "Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).

Nor do the interests of justice require an exception to this court's general rule. *See id.* ("The court will consider an issue not raised below only when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result."). Because Ohio does not have a prison-mailbox rule similar to that of the federal government, *see State ex rel. Tyler v. Alexander*, 555 N.E.2d 966, 967 (Ohio 1990), Hall's petition for a delayed appeal was not considered filed when he submitted it to his prison's mailroom. *See* Ohio S. Ct. Prac. R. 14.1(A)(2). Indeed, this point is explicitly mentioned in the pro se guide created by the Ohio Supreme Court Clerk's Office. *See Filing an Appeal in the Supreme Court of Ohio: A Pro Se Guide* at 39, *available at* http://www.supremecourt.ohio.gov/Publications/proSeGuide.pdf (last visited Nov. 1, 2011) ("Documents, submitted by mail or some other delivery service, are not considered filed until they are received in the Supreme Court Office of the Clerk **and accepted for filing**. Therefore, if you submit documents by mail, you should send them far enough in advance of the due date so they arrive by the due date." (emphasis in original)). The guide even lists a telephone number for pro se litigants to call to confirm that the Ohio Supreme Court Clerk's Office has received their filings.

Here, the lengthy delay between submission and filing has no apparent justification. But Hall was on notice that the Ohio Supreme Court has expressly declined to adopt the prison-mailbox rule, thus placing on him the obligation to monitor the status of his motion for delayed appeal to ensure that it was timely filed. Hall did not do so. Under these circumstances, declining to consider his new argument does not result in a plain miscarriage of justice.

### *3.    Reliance on* **Abela v. Martin**

The other reason in support of equitable tolling that Hall adds on appeal is that he relied on *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) (en banc), which was later overruled by *Lawrence v. Florida*, 549 U.S. 327 (2007).  His argument is as follows: (1) when he filed his motion for a delayed appeal on November 27, 2006, *Abela* stood for the proposition that such a filing would toll the limitations period until 90 days after the Ohio Supreme Court ruled on the motion; (2) only after the filing, on February 20, 2007, did *Lawrence* take those 90 days away; therefore (3) he is entitled to 90 more days of tolling, making his habeas petition timely.

This argument mirrors the one made to this court in *Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir. 2009), upon which Hall heavily relies.  There, Sherwood filed a motion for postconviction relief in state court a mere two days before AEDPA's limitations period was set to expire.  The filing of this motion in state court ensured that the limitations period would be tolled not only while the state's highest court considered the motion, but for 90 days *after* it issued a ruling on the matter.  *See Abela*, 348 F.3d at 172-73.  For this reason, this court determined that Sherwood "made a crucial decision when he opted to file his state post-conviction motion, rather than file a petition for writ of habeas corpus in federal court."  *Sherwood*, 579 F.3d at 588.  But then the Supreme Court decided *Lawrence*, which stripped Sherwood of his 90 days of added tolling and left him with only 2.  As a result, "[b]y the time the rules [had] changed, counsel had effectively no opportunity" to file the habeas petition on time, *id.* at 588 (internal quotation marks omitted)—that is, he "had already relied on *Abela*."  *Id.* at 589.  This court, under those unique circumstances, allowed equitable tolling due to Sherwood's reasonable reliance on *Abela*.

Hall argues that his reliance on *Abela* requires a similar result.  This argument, however, is waived for the same reason that Hall's lack-of-notice argument is waived: he failed to raise it below.  To be sure, *Sherwood*, which was decided after the district court dismissed Hall's habeas petition, is arguably the kind of intervening case authority that might justify an exception to the general waiver rule.  *See Planned Parenthood*

*Cincinnati Region v. Taft*, 444 F.3d 502, 516 (6th Cir. 2006) (holding that a court may appropriately consider an issue first presented on appeal where an intervening case authority might change the result because a party "can hardly be faulted for failing to raise an argument before there was legitimate legal support for such an argument").

But *Sherwood* is readily distinguishable from the case at hand because Sherwood specifically relied on *Abela* when he opted to file his state postconviction motion only two days before his AEDPA habeas deadline, and he had almost no time left on his habeas clock when *Lawrence* changed the rules. Here, in contrast, Hall's reliance on *Abela* is entirely after-the-fact, and he had nearly 10 months to complete his habeas petition once *Lawrence* was decided. His argument that he relied on *Abela*—which is already undermined by his failure to raise it in the district court—is thus far less compelling than Sherwood's. On these facts, we conclude that applying our general waiver rule to Hall's *Abela* argument does not result in a plain miscarriage of justice.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.