**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 14a0270n.06

**No. 11-3784**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LAWRENCE ANDERSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TIMOTHY BRUNSMAN, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before: BOGGS and ROGERS, Circuit Judges, and STEEH, District Judge.[*]

STEEH, District Judge. Ohio state prisoner Lawrence Anderson appeals the district court's denial of his petition for a writ of *habeas corpus*. In his *pro se* petition, Anderson claimed ineffective assistance of trial counsel. The district court entered its judgment dismissing Anderson's petition as time-barred on March 8, 2012, and, in that order, declined to issue a certificate of appealability. This court granted a certificate of appealability as to the issue presented in Anderson's *habeas* petition and appointed counsel for Anderson. Because we agree that the petition was time-barred, the judgment of the district court is affirmed.

**I**.

The facts from which Anderson's conviction of rape and kidnapping stem were set forth as follows by the Ohio Court of Appeals in its decision denying Anderson's direct appeal:

---

[*] Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

{¶ 8} On February 19, 2007, Melvina J., a health worker, arrived at the residence of her client some time shortly after 10:00 p.m. When she arrived at that location and got out of her minivan, appellant, who until recently was living with Melvina, was standing there. He appeared to be angry. When the victim exited her minivan, appellant grabbed her and forced her head through a side window of the vehicle. Then, holding Melvina around the neck, he walked her a number of blocks, accusing her of "cheating on him" and telling her, "If I can't have you, nobody can." Appellant also punched Melvina in the face as they walked. Throughout the entire incident appellant repeatedly told the victim that he was going to kill her and her children. Melvina kept telling appellant that she was not cheating and that she loved him. He took her down an alley to an empty garage where he continued raving about her alleged cheating. Appellant then picked up a "2x4" and swung it at Melvina's head. She put up her arm to protect her head and the piece of wood struck it, breaking her forearm.

{¶ 9} At this point, Melvina's testimony at trial diverged from the trial testimony of Carrie L. Rawson, a Sexual Assault Nurse Examiner, Toledo Police Officer Jeffrey S. Payne, and Detective Gene Dutz of the Toledo Police Department's Special Victim's Unit, on the issue of whether appellant raped her while in the garage. Officer Payne testified that Melvina told him that a man, whom she never identified, placed his finger in her vagina, that he licked her genital area, and that he placed his penis in her vagina. In short, the victim indicated that this individual raped her. When Payne asked Melvina to identify her assailant, she refused, stating, "[H]e will kill me and my kids."

{¶ 10} Detective Kutz provided similar testimony, but also stated that Melvina identified appellant as the rapist. Moreover, Detective Kutz interviewed appellant, who admitted putting the victim's head through the minivan window, forcibly taking her to the garage, and breaking her arm with the piece of wood, but insisted that he and Melvina then engaged in consensual sexual activity.

{¶ 11} In her testimony, Nurse Rawson referred to Melvina's medical chart, which was admitted into evidence as a business record. According to the chart and Rawson's testimony, while in the garage, appellant pushed Melvina to the floor of the garage, penetrated her with his finger, licked her genital area, and then penetrated her with his penis. During this latter act, the chart indicates that appellant choked/strangled Melvina until she lost consciousness briefly. Rawson also testified that Melvina specifically identified appellant as the individual who attacked and raped her and that Melvina reviewed the notes taken by the nurse. Finally, Rawson indicated that the victim's wet and dirty coat was returned to her before she left the hospital.

{¶ 12} When Melvina testified, however, she claimed that appellant never penetrated her vagina with his finger but that he put "his mouth on her vagina." She

further maintained that she and appellant engaged in consensual sexual intercourse on a table in the garage.  Melvina also denied ever seeing the notes taken by Nurse Rawson or of being provided with the opportunity to review any notes taken by Officer Payne and Detective Kurtz in order to determine their accuracy.

*State v. Anderson*, No. L-07-1351, 2008 WL 4823345, at *1-2.

A Lucas County grand jury issued an indictment charging Anderson with one count of rape with a violent-offender specification, one count of kidnapping with a sexual-motivation specification, and one count of felonious assault.  Anderson was convicted by a jury of rape, kidnapping, and felonious assault, and by the trial court of the specifications attached to the rape and kidnapping charges.  Anderson was sentenced to ten years to life for rape, ten years to life for kidnapping, and eight years for felonious assault.  The rape and kidnapping sentences were to be served concurrently but consecutive to the sentence for felonious assault.

Anderson secured new counsel and appealed to Ohio's Sixth District Court of Appeals.  His only claim on direct appeal concerning ineffective assistance of counsel asserted his trial counsel's failure to "ascertain from the discovery provided by the state that the coat Melvina was wearing on the night of February 19, 2007 was in the Toledo Police Department's property room."  *Id*. at * 2. The Court of Appeals affirmed the judgment of the trial court on November 7, 2008.  Anderson asserts, citing his affidavit in support of his request for delayed appeal, that he "did not receive a time stamped copy of the Judgment Entry and Opinion [of the Ohio Court of Appeals] until April 28, 2009."  Appellant's Br. At 11.  On June 15, 2009, Anderson filed a *pro se* notice of appeal and a motion for delayed appeal to the Ohio Supreme Court.  That motion was denied on July 29, 2009.

Anderson filed his petition for habeas corpus on April 23, 2010.[1] In that petition, Anderson stated only one claim: "Ineffective assistance of counsel. Trial counsel failed to investigate discovery package concerning exculpatory DNA evidence." R.1, PageID 5. The government responded to the petition with a motion to dismiss, asserting that the petition was time-barred. The magistrate judge to whom the petition was referred for a report and recommendation issued a report on February 11, 2011, recommending that the court dismiss the petition on that basis. Anderson filed objections to the report and recommendation in late April 2011, which were considered by the district court despite their late date. The district court then entered an order overruling Anderson's objections, adopting the magistrate judge's report and recommendation, and dismissing Anderson's petition as time-barred. As noted above, the district court declined to issue a certificate of appealability. Anderson filed a notice of appeal with this court, which was construed as an application for a certificate of appealability under Federal Rule of Appellate Procedure 22(b)(2). This court granted that request, appointed counsel for Anderson, and directed the clerk of court to issue a briefing schedule on the issue of whether Anderson's trial counsel was ineffective.

**II**.

We are presented on appeal with the same threshold issue found to be dispositive by the district court: whether or not Anderson's habeas petition is time-barred. Anderson's petition, filed in 2010, is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The answer to this question boils down to whether the AEDPA's one-year statute of limitations began to run 45 days after the ruling of the Ohio Court of Appeals, or whether–as Anderson argues–it

---

[1] This appears to be the date Anderson presented his petition to prison officials, which is deemed to be the filing date under the mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 273 (1988).

began running after the Ohio Supreme Court's disposition of his motion for delayed appeal and notice of appeal on July 29, 2009.

The district court's determination that Anderson's habeas petition was untimely is reviewed by this court *de novo*.  *See DiCenzi v. Rose*, 452 F.3d 465, 469-70 (6th Cir. 2006) (citing *Miller v. Collins*, 305 F.3d 491, 493-94 (6th Cir. 2002)).

There is no dispute here that the timeliness of Anderson's petition is governed by the first specified limitation period of the AEDPA:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review*;

AEDPA, 28 U.S.C. § 2244(d)(1)(A) (emphasis added).  There is also no dispute that Anderson's petition was filed more than one year after the expiration of the time period for filing a timely appeal with the Ohio Supreme Court.  Anderson takes the position, however, that a motion for delayed appeal can be considered part of the *direct* review of a conviction, depending on the "underlying procedural history and facts of the individual case."  Appellant's Br. at 21.

Anderson's argument is not persuasive.  Our decision of *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001), confirms that in the situation where a habeas petitioner fails to timely seek review of a state appellate court decision, the conviction is final when the time period for filing that appeal expires.  *Id.* at 519.  See also *DiCenzi*, 452 F.3d at 469-70.  As explained in the *Searcy* decision, to delay the commencement of the running of the statute of limitations until the resolution of a motion for delayed appeal, which can be filed years after conviction, would "effectively eviscerate the AEDPA's statute of limitations."  *Searcy*, 246 F.3d at 519 (quoting *Raynor v. Dufrain*, 28 F. Supp.

2d 896, 898 (S.D.N.Y. 1998)).  Consequently, while Anderson attempts to characterize his request to file a motion for delayed appeal as a part of his direct appeal, this is inaccurate.  *Searcy*, 246 F.3d at 519.

Under the circumstances presented in the instant case, the AEDPA statute of limitations began to run on December 22, 2008.  With respect to Anderson's request to file a delayed appeal, which he filed on June 15, 2009, such a post-conviction or collateral proceeding may toll the statute of limitations, but does not restart it.  *DiCenzi* at 468 (citing *Searcy*, 246 F.3d at 519). Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  Additionally, the ninety-day period applicable to petitions for certiorari to the United States Supreme Court does not enter the calculation in this scenario, for the reason that the motion for delayed appeal was not a part of the direct review.  *Searcy*, 246 F.3d at 519, *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (holding that "§ 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

Accordingly, the statute of limitations was tolled for a period of 45 days, from the filing of Anderson's motion for delayed appeal on June 15, 2009, until its disposition on July 29, 2009.  The limitations period then expired on February 5, 2010.  Anderson's habeas petition, which he signed on April 23, 2010 and was filed by the district court on June 2, 2010, was thus untimely, regardless of whether the April or June date is considered.

Anderson also asserts that equitable tolling saves his late filing.  Under *Holland v. Florida*, 560 U.S. 631 (2010), to be afforded this relief, a petitioner must first establish that his rights have

been pursued with diligence. Second, the petitioner must show that an extraordinary circumstance was the cause for the untimely filing. *See Hall v. Warden*, 662 F.3d 745, 749-50 (6th Cir. 2011) (discussing *Holland*'s two-part test). The burden is on Anderson to show he was entitled to this relief. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

Anderson asserts that he did not receive a copy of the decision of the Ohio appellate court from either the court clerk or his lawyer prior to April 28, 2009. He further states that after he received his time-stamped copy, he did not have the resources to pay for necessary copies of documents, and had only limited assistance and time in the library to prepare legal filings.

As the respondent points out, however, even after Anderson's motion for delayed appeal was denied, he had more than six months to file his habeas petition. In fact, the motion for delayed appeal itself was filed more than 45 days after Anderson acknowledges receiving his "time-stamped copy." Anderson does not persuade the court of his diligence or that these are the kind of extraordinary circumstances entitling a petitioner to such rarely granted relief. *See Holland*, 130 S. Ct. at 2562 (holding that counsel's failure to turn over trial transcript and other documents, as well as restrictions on visits to the prison's law library, did not entitle petitioner to equitable tolling).

Finally, Anderson makes the argument that his actual innocence entitles him to equitable tolling of the statute. While this court has allowed for equitable tolling on this basis in certain extraordinary situations, no such circumstances are present here. Under the standard stated in the landmark case of *Schlup v. Delo*, 513 U.S. 298, 321 (1995), this claim "requires petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id*. at 324.

In Anderson's response to respondent's motion to dismiss in the district court proceedings, Anderson asserted that "[t]he record is full with clear and convincing evidence of innocence." Anderson recounts trial testimony of Melvina describing both the sex and the walk to the garage as consensual. Anderson also included the statement that "[f]urthermore and most unusual is that the DNA taken at the hospital from the alleged victim does not match the petitioner!" R 7, Page ID 161. Finally, Anderson wrote about a letter Melvina wrote to the prosecutor in April 2007, in which she requested that the charges against Anderson be dropped, and wrote that she "said things that I shouldn't have said. Also in my anger I said things to Lawrence Anderson that provoked him to behave as he normally wouldn't have toward me." See Exhibit A to appellant's brief on appeal.

None of this amounts to new evidence or extraordinary circumstances. The letter was an exhibit at trial. The guilty verdict took this letter into consideration. As respondent emphasizes, the Ohio appellate court found that "the testimony of the law enforcement officers, Nurse Rawson, and the physical evidence provide overwhelming evidence of appellant's guilt." *Anderson*, 2008 WL 4823345, at *3. Anderson's argument for equitable tolling on this basis lacks merit.

**III**.

Because Anderson's petition is time-barred, we will not address the respondent's alternative arguments regarding procedural default and the merits of the petition. Additionally, given our ruling, Anderson's motion to take judicial notice of the trial court record and transcripts and to enlarge the record is denied as moot.

**IV**.

Anderson's habeas petition was filed after the expiration of the applicable AEDPA limitations period and we hold he is not entitled to equitable tolling of the statute.  The judgment of the district court is therefore **AFFIRMED**.