NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0344n.06

No. 21-1514

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 19, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| VINCENT L. MOORE, | ) | |
| Petitioner-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| MIKE BROWN, Warden, | ) | |
| Respondent-Appellee. | ) ) | OPINION |

Before: GILMAN, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

In 2011, a Michigan jury convicted Vincent Moore of aiding and abetting the murder of William Ferguson. After exhausting his appeals and collateral attacks in state court, Moore retained new counsel, who located purportedly new witness evidence. Moore now seeks federal habeas relief, arguing that his trial counsel was ineffective for failing to investigate, develop, and present evidence from these witnesses. But he waited too long to present most of this evidence, and the evidence that is timely cannot sustain a claim that trial counsel was ineffective. Accordingly, we affirm the district court's denial of Moore's habeas petition.

I.

In 2011, Moore was involved in the shooting death of William Ferguson in Detroit, Michigan. Ferguson, his girlfriend Heather Farnsworth, and one of Farnsworth's friends drove from West Virginia to Detroit to conduct a pre-arranged drug deal: Ferguson and Farnsworth

brought cash to buy OxyContin from Moore. Ferguson and the others met Moore in Detroit, and the group eventually went to an abandoned house on McKinney Avenue to complete the transaction. Before they completed the drug deal, Moore announced he was "going outside to get a blunt," and immediately thereafter, several "[p]eople came in with guns." One of the men shot and killed Ferguson, and neighbors saw two men leave the house with their faces obscured. Moore was arrested for his role in the shooting.

At trial, Moore was represented by attorney Marvin Barnett. The jury convicted Moore of first-degree felony murder and armed robbery. With new court-appointed counsel, Moore appealed his convictions, arguing that Barnett had been ineffective, but the Michigan Court of Appeals disagreed and affirmed Moore's conviction. *People v. Moore*, No. 306669, 2013 WL 514815 (Mich. Ct. App. Feb. 12, 2013) (per curiam).

Moore then retained Barnett again. Instead of filing an application for leave to appeal in the Michigan Supreme Court, Barnett filed a motion for a new trial and sought an evidentiary hearing, alleging that Moore's due-process rights were violated when the jury briefly deliberated with one member absent. The trial court construed the filings as a motion for relief from judgment and denied relief. Moore unsuccessfully appealed through the Michigan courts, still represented by Barnett, which culminated with the Michigan Supreme Court's denial of leave to appeal on March 31, 2015. *People v. Moore*, 860 N.W.2d 629 (Mich. 2015) (mem.).

Moore then retained new counsel to investigate and file this habeas petition. With habeas counsel's help, three relevant categories of allegedly new evidence came to light in 2015.

First, David Lamont Carbin authored a statement. Carbin lived about six blocks from the McKinney home. On the morning of the murder, he walked past the McKinney home while en route to a friend's house. Around 9 A.M., Carbin saw a man he recognized as Moore get into a

-2-

"small, black foreign car and drive away." Carbin continued walking to his friend's home and stayed there for a few hours. As he was walking home, though, he heard shots—presumably the shooting of Ferguson. He was close enough to the McKinney home to see two men come out of the house, get into a car, and drive away.

Carbin "never heard anything more about the shots fired that day," until he was on Facebook in 2015 and saw a post about a "a shooting on McKinney." That post explained that Moore had been convicted of killing Ferguson, but Carbin was "certain that Vincent Moore was not one of the men [he] saw leave the house after the shots were fired." He was also "certain that Vincent Moore's . . . car was not parked on the street anywhere nearby." Because Carbin realized that he had possibly new information, he reached out to Moore's family and provided this statement.

Second, Moore's father, mother, and older brother all signed sworn affidavits that Moore was at the family home during the time of the murder.

Third, several people who knew Farnsworth and Ferguson provided statements. These individuals all live in West Virginia, and the district court categorically referred to them as the "West Virginia witnesses," which we will continue to do. Nicole Renee Hammons explained that she knew Farnsworth, and if asked, could testify to Farnsworth's "reputation in the community as a dishonest person." Penny Ferguson, the decedent's sister, explained that she "firmly believe[d] that Heather [Farnsworth] helped to arrange or 'set up' [Ferguson]'s murder in order to split the money from the drug deal with the men who killed [Ferguson]." Penny further stated that Farnsworth had "a reputation in our community of being a liar," that she had stolen money from Ferguson on at least one occasion, and that she later dated one of the men involved in Ferguson's death. Betty Crittenden, the decedent's sister-in-law, stated that she knew about Farnsworth's

"reputation in our community as a dishonest person." She believed that Ferguson "was killed because [Farnsworth] was heavily into drugs and needed money to support her lifestyle," and that Farnsworth "arranged for [Ferguson] to be robbed so she could use the money to pay off her drug debts."

With this newly marshalled evidence, Moore filed a habeas petition in district court on September 21, 2015. That petition raised one claim: that Moore's Sixth Amendment rights were violated when the jury deliberated without one member present. On November 20, 2015, Moore sought to stay the case, asking the district court to permit him to return to state court to exhaust a claim that Barnett was ineffective for failing to investigate witnesses. The district court granted the motion, but Moore was unsuccessful in the state courts. *People v. Moore*, 919 N.W.2d 60 (Mich. 2018) (mem.).

Moore then returned to the district court and filed a supplemental brief that raised two claims: (1) actual innocence, and (2) ineffective assistance of trial counsel for failing to investigate, develop, and present evidence that Moore had an alibi, and that Farnsworth was involved in the crime. The district court found that Moore's initial petition was untimely, that he was not entitled to equitable tolling on the claim presented in the initial petition, and that his freestanding actual-innocence claim was not cognizable on habeas review. The court also held that Moore's ineffective-assistance claim was timely to the extent that it was based on Carbin's statement, but untimely to the extent that it was based on Moore's family's statements and the West Virginia witnesses' statements. The district court then found that the Carbin statement was insufficient to demonstrate prejudice for Moore's ineffective-assistance-of-counsel claim. Accordingly, the district court denied Moore's habeas petition.

Moore timely appealed. We denied a certificate of appealability (COA) on several grounds (the freestanding actual-innocence claim, the initial petition's timeliness, and the actual-innocence gateway through the statute of limitations), but granted a COA as "to his claim of ineffective assistance of counsel so that a panel may determine (1) whether the portions of his claim based on the Carbin affidavit, the family-member affidavits, and the West Virginia witness affidavits are timely and (2) whether Moore's claim of ineffective assistance of counsel is meritorious." *Moore v. Brown*, No. 21-1514 (6th Cir. Jan. 13, 2022) (order).

II.

Before we consider the merits of Moore's ineffective-assistance claim, we must determine which portions of the claim are timely. We review de novo the district court's conclusions regarding the timeliness of a habeas petition. *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), governs habeas petitions challenging state convictions. AEDPA imposes a one-year statute of limitations that runs from the latest of four possible dates, two of which are relevant here:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> * * *
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute tolls this one-year statute of limitations while a "properly filed application for State post-conviction or other collateral review" is pending. § 2244(d)(2). The limitations period can also be tolled equitably if a petitioner can show that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

As we previously explained, the limitations period under § 2244(d)(1)(A) expired on September 17, 2015. *Moore v. Brown*, No. 21-1514 (6th Cir. Jan. 13, 2022) (order). Moore first raised his failure-to-investigate ineffective-assistance-of-trial-counsel claim in the motion to stay, which was filed in the district court on November 20, 2015. Thus, no portion of his claim is timely under § 2244(d)(1)(A).

The more difficult date to calculate is the date proscribed by § 2244(d)(1)(D), which sets out a one-year statute of limitations from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The petitioner bears the burden of demonstrating his diligence. *DiCenzi*, 452 F.3d at 471. But AEDPA "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Id*. at 470 (citation omitted). We must determine when a "duly diligent person in petitioner's circumstances would have discovered" the new evidence. *Id*. (citation omitted). Thus, the question "is not when [petitioner] first learned of the new evidence; it is when [he] should have learned of the new evidence had [he] exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004).

We must determine when each of the three categories of evidence presented with this habeas petition could have been discovered through the exercise of due diligence.

First, Carbin's statement. The government concedes that this portion of Moore's claim is timely because no reasonable investigation would have discovered Carbin's eyewitness account until Carbin came forward and provided a statement on May 9, 2015. We agree. Carbin was entirely unconnected to the case, and *he* reached out to Moore's family after learning about Moore's conviction—Moore's family or counsel did not discover him. Thus, the statute of

limitations on this portion of the claim began on or around May 10, 2015, making this portion of Moore's claim timely under § 2244(d)(1)(D).

Second, the family-member affidavits. Moore relies on this evidence to establish an alibi—that he was with them at home during the murder. But Moore would have been aware of these witnesses and their helpful statements, at the very latest, on the day he appeared for a preliminary examination: October 1, 2010. At this hearing, several witnesses were asked about their whereabouts on the date of the murder and testified about the murder. Moore, present at this hearing, could have begun developing the factual basis for an alibi at that point. Accordingly, the one-year term provided by § 2244(d)(1)(D) ran long ago, and this portion of the claim is untimely.

Third and finally, the West Virginia witnesses' statements. Their statements were signed between June and November 2015. Moore avers that he did not learn of the West Virginia witnesses until 2015 because he asked Barnett to investigate whether character witnesses existed, but Barnett apparently refused, without explanation, to conduct any investigation. Moore's parents also hired a private investigator to search for witnesses in 2012, but the investigation did not turn up any useful evidence. But when Moore hired counsel for this petition and appeal, counsel was able to contact, interview, and obtain affidavits from all three West Virginia witnesses within seven months.

Moore has not explained why he, acting diligently, could not have discovered the West Virginia witnesses sooner. True, Moore has established that he asked Barnett to investigate these witnesses, and that his family hired a failed private investigator in 2012. But Moore has not explained what actions, if any, he took between 2012 and 2015, when current counsel was able to discover these witnesses. A failure to act for three years cannot constitute due diligence. *See, e.g., Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 611 (6th Cir. 2013) (finding a failure

to explain seven months' inaction fatal to a § 2244(d)(1)(D) due-diligence claim). Moore has not demonstrated anything during that period that would have prevented him from discovering the evidence. And the fact that current counsel was able to obtain these witnesses within seven months, without detailing any onerous investigation requirements, cuts against Moore's claim. A diligent investigation exposed the witnesses in a short time, and Moore has not shown why that diligent investigation was impossible to conduct back in 2011. Accordingly, Moore has failed to establish that the date on which the factual predicate of this claim could have been discovered was less than one year before he raised this claim, and this portion of his claim is untimely.

Unable to show timeliness under the statute, Moore next argues that equitable tolling applies to his claims based on the family and West Virginia witnesses' affidavits because Barnett effectively abandoned him by failing to investigate these witnesses.

"[E]quitable tolling is used sparingly by federal courts. The party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation omitted). Moore is entitled to equitable tolling only if he shows that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Hall*, 662 F.3d at 749 (quoting *Holland*, 560 U.S. at 649). Where, as here, a district court's ruling on equitable tolling is based on undisputed facts, we review the issue de novo. *Robertson*, 624 F.3d at 784.

Moore is not entitled to equitable tolling for the same reason his claims are not timely under statute: he has not demonstrated that "he has been pursuing his rights diligently." Thus, he does not satisfy the first requirement of equitable tolling, and his claim, at least to the extent it relies on the family and West Virginia witnesses' affidavits, remains untimely.

III.

With Moore's ineffective-assistance claim narrowed to only the timely portion—Carbin's statement[1]—we turn to the merits of that claim. We review the district court's decision here de novo.[2] *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011).

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong is satisfied when a petitioner "show[s] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. That requires the reviewing court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. And it is generally "appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The second prong is satisfied when the petitioner "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[1]The Warden argues that the Carbin statement is insufficient to demonstrate prejudice because it is an inadmissible statement rather than an affidavit. But the statement contains an attestation clause indicating that he read and understood the statement, and that it is true and correct to the best of his knowledge, so we assume for the purposes of this analysis that it is admissible.

[2]It appears that Moore's failure-to-investigate ineffective-assistance claim is procedurally defaulted, because the state trial court ruled that it was barred by the state's procedural requirement of res judicata. Generally, we may not review federal claims that were procedurally defaulted in state courts. *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020). But the Warden does not argue that Moore procedurally defaulted this claim. Given that we are "[l]oath to raise issues for the parties, much less resolve cases on them," we proceed to the merits of the claim. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017).

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel has a duty to investigate defenses. *Wiggins v. Smith*, 539 U.S. 510, 527–28 (2003). When "assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527. And it is not trial strategy to conduct a half-hearted investigation: "strategic choices made after less than complete investigation will not pass muster as an excuse when a full investigation would have revealed" helpful evidence. *Dickerson v. Bagley*, 453 F.3d 690, 696 (6th Cir. 2006).

Moore argues that Barnett was ineffective for failing to investigate witnesses before trial. However, he does not explain how Barnett could be expected to have discovered Carbin—an individual who lived several blocks away, who just happened to be walking by the murder scene at the time of the murder, and who did not speak to anyone involved until years after trial. Moore has not pointed to "known evidence" that would have led "a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. Indeed, this illustrates the paradox of Moore's position: if the Carbin statement was not discoverable before trial (rendering it timely under § 2244(d)(1)(D)), its absence cannot show that Barnett's representation was ineffective.

Moore also argues that Barnett was generally ineffective, citing his odd statements during trial and his later suspension and disbarment. Although we must consider Barnett's "overall performance" as part of Moore's claim, we must do so only as background to determine whether the "identified acts or omissions" rendered ineffective performance. *Kimmelman*, 477 U.S. at 386. Because Carbin was completely unknown to anyone involved in the trial or defense, and because no reasonable investigation would have revealed his existence, that "identified . . . omission[]" is

-10-

insufficient to establish that Barnett's performance fell below standards of professional competence, no matter how reprehensible his overall performance. Thus, Moore's performance was not deficient, and in turn, he did not provide ineffective assistance of counsel.[3]

IV.

For these reasons, we affirm the judgment of the district court.

---

[3]As with the district court, by so holding, we do not mean to justify Barnett's behavior. Had Moore brought a broader (and timely) ineffective-assistance claim, perhaps the outcome would be different. But in this case, the only "identified . . . omission[]" is Barnett's failure to discover and produce the Carbin statement before trial. On this very narrow claim, Barnett was not ineffective.